BEL–TON ELECTRIC SERVICE,
INC. a/k/a Bel–Ton Electric,
Inc., Appellant,

v.

Suzie Y. PICKLE and National Union
Fire Ins. Co. of Pittsburgh,
Pennsylvania, Appellees.

No. 05–92–02201–CV.

Court of Appeals of Texas,
Dallas.

April 4, 1994.

Rehearing Denied May 5, 1994.

Mark Greenberg, Kevin J. Cook and Gary W. Maxfield, Dallas, for appellant.

David Bell, Charles T. Frazier, Jr., and William F. Allred, Dallas, for appellee.

Before THOMAS, CHAPMAN and ROSENBERG, JJ.

## OPINION

CHAPMAN, Justice.

Bel–Ton Electric Service, Inc. a/k/a Bel–Ton Electric, Inc. (Bel–Ton), appeals a judgment in favor of Suzie Y. Pickle [1] and National Union Fire Insurance Co. of Pittsburgh, Pennsylvania.[2] In five points of error, Bel–Ton contends that the trial court erred (1) in submitting the question of proximate cause to the jury, (2) in failing to grant Bel–Ton's motion for judgment notwithstanding the verdict because there was no evidence of proximate cause, (3) in failing to grant Bel–Ton's motion for new trial because there was insufficient evidence of proximate cause, and (4) in refusing to give Bel–Ton a credit for $345,000 paid in settlement by LTV Aerospace and Defense Co. (LTV). It also asserts that the trial court abused its discretion in refusing to submit Bel–Ton's proposed sole-cause instruction, and that the evidence

is factually insufficient to support the jury's verdict. We affirm.

### Facts & Procedural History

In November 1987, the decedent, Joe Pickle, an LTV employee, was killed when he was crushed between the closing east hangar door and a wall in a hangar at LTV. The hangar was being renovated by LTV. As part of the renovations, the security booth was built in the middle of the hangar so that access to the hangar could be controlled.

In February 1987, LTV contracted with Bel–Ton to relocate to the security booth one or more electrical switches that operated the hangar door in question.[3] The switches had been in place approximately forty years. Bel–Ton relocated one set of switches but did not change the way the switches operated. It relocated the switches on the west wall of the hangar but left the switches on the east wall in place. It was contested at trial whether Bel–Ton had contracted to move the switches on the east wall.

If a switch was activated to open a hangar door, the hangar door would remain open as long as the switch remained in the "open" position. If the operator let go of the switch, it would spring to a neutral position and the door would stop and remain in that position. The hangar door could be closed in the same manner, by holding the switch in the "close" position.

Charles Rovell, the lead safety engineer for LTV, testified that LTV used the hangar for temporary offices. At some point after Bel–Ton moved the switches, one of the LTV computer programmers jammed the switch on the east wall in the "close" position so that if the hangar door in question was opened, it would then immediately begin to close once the person released the switch. Normally, the hangar door would stay open once the switch that was used to open it was released.

---

1. In this opinion, Suzie Y. Pickle is also referred to as "the plaintiff."

2. The trial court awarded appellee, National Union, the workers' compensation carrier for LTV Aerospace and Defense Co., reimbursement for medical expenses, workers' compensation benefits paid, and attorneys' fees. National Union intervened in this lawsuit seeking this recovery.

3. There were two hangar doors in the building. One set of switches controlling the doors was on the west wall of the hangar and one set was on the east wall. Both doors could be controlled from the switches on both walls.

The computer programmer jammed the switch to discourage engineering employees from using the hangar door as a "short cut" to the restrooms. When the hangar door in question was opened, the wind would blow through and disrupt the computer programmers.

The decedent was an electrician at LTV. On November 5, 1987, nine months after Bel–Ton completed its job, the decedent came to the hangar to change light bulbs. Rovell surmised that the decedent opened the hangar door by using the switches in the security booth. The decedent was killed when he somehow became trapped between the door and the wall of the security booth when the hangar door automatically closed. The decedent said "whoa" when he saw the door closing and placed his hand up against the door. He apparently thought it would behave like an elevator door and open if something was in its path.

Rovell testified that he was in charge of investigating the accident. He said he was surprised that a switch had been left on the east wall. He said leaving the switches on the east wall emasculated LTV's purpose of securing the hangar.[4] The switches left on the east wall could overrule and control the switches in the security booth. Rovell said the switch would "stick" or jam even though it was not normally supposed to because there was a buildup of paint on it. The switch had been painted with "gooey" paint.[5]

Rovell testified that Bel–Ton was supposed to remove the switches from both walls. Plaintiff's exhibit 4, a blueprint of the electrical changes for the renovation, provides that the control switches on the east wall were also to be relocated. Rovell said that Martin Davis, the head of electrical engineering at LTV, also expressed surprise at that time that the switches on the east wall were still there. He testified that the accident would not have occurred if Bel–Ton had removed the switches from the east wall. Rovell also said the accident would not have happened if the switch had not been jammed.

During the investigation, Rovell brought in representatives from Bel–Ton to discuss why the east-wall switches were still in place. Davis asked the Bel–Ton representatives why they did not remove the switches on the east wall. He said Davis told him at that time that Bel–Ton should not have left the switches on the east wall. Rovell said he told Davis that "the switch that Bel–Ton left there was the problem and what had caused [the decedent's] death." He said that at that time, Davis was upset with Bel–Ton for not removing the switches on the east wall. The Bel–Ton representatives expressed surprise that they were supposed to remove the switches.

The plaintiff called Edward Campbell, an accident investigator for Garret Engineers, as an expert witness. Campbell testified that plaintiff's exhibits 4 and 5[6] indicated that both sets of switches were to be relocated. He said Bel–Ton caused an unsafe condition to exist by not moving both sets of switches. He said the accident would not have occurred had the switches on the east wall been removed. Because the switches remained on the east wall, the doors could be controlled by two different switches at the same time, with the operator having no idea of which switch would be in control. He testified that the instructions on the blueprints calling for the removal of both switches would have been sufficiently clear to any electrician doing the work.

Campbell testified that the Electrical Engineers' Handbook states that for "sound engineering practice," there should be only one switch to control each motor or door. At the hangar, both the east-wall and security-booth switches could control the same hangar door. He also said the switch should be in the line of sight of the object controlled. Campbell said the hangar door was not com-

---

**4.** Rovell was not aware, until the time of the accident, that the building was used as temporary offices. The building was to be secured because it was eventually going to be used by LTV for a "classified" project.

**5.** Rovell testified that the paint was fresh. Apparently, the paint was fresh the day Rovell investigated the accident.

**6.** Plaintiff's exhibit 5 was another blueprint of the planned electrical changes.

pletely in the line of sight of a person operating the doors by using the east-wall switches.

Martin Davis did not testify in person, but his deposition was read into the record. Davis said that the electrical plans did not specifically state which switches were to be removed. He said he knew the switches on the east wall had been left in place before Bel–Ton left the job. He did not ask Bel–Ton to move the switches. He said the intent of the renovation was to operate the hangar door from the security area.

Davis said he was in charge of overseeing Bel–Ton's work. Bel–Ton did not design the renovation plans. He did not consider it part of Bel–Ton's job, as he interpreted the blueprints, to remove the switches on the east wall. He accepted Bel–Ton's work on behalf of LTV and Bel–Ton was paid for the job. He said representatives from Bel–Ton told Rovell after the accident that they interpreted the plans to say that they did not have to move the switches on the east wall.

At trial, the plaintiff contended that Bel–Ton was negligent because it failed to remove the east-wall switches. In the charge, the jury was asked only to compare the negligence of Bel–Ton and the decedent.[7] The jury found that Bel–Ton was 100 percent negligent and that the negligence was a proximate cause of the decedent's death. The jury awarded actual damages totalling $850,-000. This amount included $500,000 in pecuniary damages, $250,000 for loss of companionship, and $100,000 for mental anguish.

Bel–Ton moved for judgment notwithstanding the verdict. Bel–Ton also sought a credit in the amount of $345,000. LTV settled claims brought by the plaintiff, the wife of the decedent, against LTV for $345,000. The trial court refused the credit.

## Sufficiency

In its first point of error, Bel–Ton contends that the trial court erred in denying its motion for judgment notwithstanding the verdict because Bel–Ton's conduct was not a proximate cause of the death of the decedent as a matter of law.[8] In its second and third points of error, Bel–Ton asserts that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict because there was no evidence or insufficient evidence that Bel–Ton's conduct was a proximate cause of the death of the decedent.

Bel–Ton filed a motion for judgment notwithstanding the verdict in which it alleged that the act of the LTV employee in jamming the switch was a new and intervening cause and, in the alternative, that the employee's act was not reasonably foreseeable by Bel–Ton. On appeal, Bel–Ton asserts that it merely failed to move the switches, that the switches were safe as they were, and that the accident was caused by the jamming of the switch. It further contends it was not foreseeable that someone would jam the switch.

The issue of whether the trial court erred in failing to grant a motion for judgment notwithstanding the verdict is reviewed using the same standard of review as that for a legal-sufficiency point. *See Southwestern Bell Tel. Co. v. Sims,* 615 S.W.2d 858, 861 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Chemical Cleaning, Inc. v. Chemical Cleaning & Equip. Serv., Inc.,* 462 S.W.2d 276, 277 (Tex.1970), *overruled on other grounds, Pool v. Ford Motor Co.,* 715 S.W.2d 629, 632 (Tex.1986). Therefore, we will address these issues together.

A "legal sufficiency" point is a "no evidence" point presenting a question of law. In deciding that question, we must consider only the evidence and the inferences tending to support the finding and disregard all evi-

---

7. There was no jury question allowing the jury to consider as a cause of the accident the negligence of LTV through its employee's act of intentionally jamming the switch. A defendant may not obtain contribution from the plaintiff's employer where the third-party negligence action arises out of an accidental injury covered by worker's compensation insurance. *See Williams v. Union Carbide,* 734 S.W.2d 699, 702 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

8. Bel–Ton should have couched this point of error as a "no evidence" point. *See Aerospatiale Helicopter Corp. v. Universal Health Serv., Inc.,* 778 S.W.2d 492, 496 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990).

dence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interest of justice requires another trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

When determining a factual sufficiency point of error, this Court must consider and weigh all the evidence in the case. It should set aside the verdict and remand the cause for a new trial if it concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict. *See Pool v. Ford Motor Co.,* 715 S.W.2d at 635. The appellate court generally does not pass upon the credibility of the witnesses or substitute its judgment for that of the jury, even if conflicting evidence exists that would support a different conclusion. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986)(; *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex.App.—Dallas 1988, writ denied). When both legal and factual sufficiency points are raised, we must first examine the legal sufficiency point of error. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981).

Negligence claims consist of the following elements: (1) a duty owed to the plaintiff, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). To establish such a claim, the plaintiff must show the defendant's action or failure to act was a proximate cause of his damages. *See id.; El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

Proximate cause is legal causation and embraces two concepts: the cause in fact of an event and the foreseeability of the event. Both elements must be present to establish proximate causation. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975).

"Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992).

"Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis,* 830 S.W.2d at 98; *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549–50 (Tex. 1985); *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977). The test for foreseeability is whether the defendant, as a person of ordinary intelligence and prudence, should have anticipated the danger to others created by his act, although he is not required to anticipate just how the injuries will arise. *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223 (Tex.1988). Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Id.; El Chico,* 732 S.W.2d at 313.

There can be concurrent proximate causes of an accident. *Travis,* 830 S.W.2d at 98. Generally, all persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable.[9] *Id.; El Chico,* 732 S.W.2d at 313.

Proximate cause is typically a question of fact. However, lack of proximate cause may be established as a matter of law where the circumstances are such that reasonable minds cannot arrive at a different conclusion. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471–72 (Tex.1991); *Boyd v. Fuel Distrib., Inc.,* 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied).

The theories of sole cause and intervening cause may be established as a matter of law. *See Teer v. J. Weingarten, Inc.,* 426 S.W.2d 610, 612 (Tex.Civ.App.— Houston [14th Dist.] 1968, writ ref'd n.r.e.). These theories relating to proximate cause are submitted to the jury by instruction if

---

9. An employer would not be subject to a judgment for simple negligence if the employee is precluded from suing the employer by the Texas Worker's Compensation Act. *See Williams,* 734 S.W.2d at 702.

raised by the evidence. *See McDonald Transit, Inc. v. Moore,* 565 S.W.2d 43, 45 (Tex.1978). An intervening cause that is reasonably foreseeable by the defendant is not such a new and independent cause as to break the chain of causation between the defendant's negligence and the injury complained of to the extent of relieving the defendant of liability for such injury. *Travis,* 830 S.W.2d at 98; *Nixon,* 690 S.W.2d at 550; *Teer,* 426 S.W.2d at 614. The intervention of an unforeseen cause of the plaintiff's injury does not necessarily mean that there is a new and independent cause of such character as to constitute a superseding cause that will relieve the defendant of liability. *Teer,* 426 S.W.2d at 614. The intervening cause of the plaintiff's injury, even if unforeseeable, may be a concurrent cause if the chain of causation flowing from the defendant's original negligence is continuing and unbroken. *Id.*

In Bel–Ton's "favor," the record reflects that the switches on the east and west walls were already in place when Bel–Ton came to LTV to do the work. Bel–Ton did not change the way the switches worked. It did not change the switch so that it would "overrule" the switch that was moved to the security booth. The switch on the east wall "stuck" and was able to be jammed because of the paint. Bel–Ton did not cause the switch to become "jammable." Further, the jamming of the switch increased the likelihood that the hangar door would operate in an unexpected fashion when someone then tried to operate it using the switches in the security booth.

However, the record also reflects that Bel–Ton was negligent in failing to move the switches on the east wall and that this was a proximate cause of the decedent's death. Campbell testified that Bel–Ton caused an unsafe condition to exist by not moving both sets of switches to the security booth. He said the accident would not have occurred had the switches on the east wall been removed. The fact that Bel–Ton did not foresee the exact manner in which the injury would occur once it created the dangerous condition does not mean it was not a proximate cause of the injury. *See Travis,* 830 S.W.2d at 98.

A review of all the evidence in the record shows that there is sufficient evidence to support the jury's finding that Bel–Ton's conduct was a proximate cause of the injury. Campbell testified that the blueprints called for both sets of switches to be relocated and Bel–Ton did not relocate them. He said Bel–Ton caused an unsafe condition to exist by not moving both sets of switches. He said the condition was unsafe because of the ability of two different switches to control the same door at the same time. He said the accident would not have occurred had the switches on the east wall been removed. There was evidence that the injury was foreseeable in that Bel–Ton should have anticipated the danger. *See Travis,* 830 S.W.2d at 98.

There was some evidence that Bel–Ton should have known that it is not a sound practice to have two switches control one motor. Rovell testified that Bel–Ton should have known that the blueprints called for both sets of switches to be moved. Therefore, because there was evidence that Bel–Ton should have known that the east-wall switches were still in place, that it was supposed to move them, and that it is unsafe to have two sets of switches able to operate one door, it cannot be said that Bel–Ton could not foresee the possibility that the hangar door might be operated by two switches at the same time. Because one switch could override the other and cause the door to operate in an unexpected way, this was an unsafe condition. This evidence in the record supports a finding that the injury was foreseeable. *See Brown,* 764 S.W.2d at 222.

Although there was some testimony from Davis that Bel–Ton was not required to move the east-wall switches, there was other evidence from Campbell from which the jury could have found that Bel–Ton breached its duty in this regard. The appellate court does not pass upon the credibility of the witnesses or substitute its judgment for that of the jury, even if conflicting evidence exists that would support a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Harco,* 765 S.W.2d at 810. Campbell's testimony supports the jury's finding that Bel–Ton's conduct was a proxi-

mate cause of the accident. We hold that the evidence is legally sufficient to support the jury's finding regarding proximate cause. *See Garza,* 395 S.W.2d at 823. After reviewing all of the evidence, we further hold that the evidence is factually sufficient as well. *See Pool,* 715 S.W.2d at 635.

■ Bel–Ton contends that if it conclusively established that the act of the LTV employee was an intervening cause, it could not be a proximate cause of the accident. *See Aerospatiale Helicopter Corp. v. Universal Health Serv., Inc.,* 778 S.W.2d 492, 497 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990). Appellees assert that Bel–Ton waived this issue because it failed to request a jury instruction regarding intervening cause. However, Bel–Ton did not need to request a jury instruction regarding intervening cause in order to complain of the failure to grant its motion for judgment notwithstanding the verdict. Bel–Ton raised the issue of intervening cause in its motion and obtained a ruling. We hold that Bel–Ton has not waived error in this regard. *See Halford v. Perry,* 310 S.W.2d 745, 746–47 (Tex.Civ.App.—Dallas 1958, no writ); *see also Cecil v. Smith,* 804 S.W.2d 509, 512–13 n. 1 (Tex.1991).

■ In deciding whether an act is a concurring or a new and independent cause, we are faced with the difficulty of applying the tort standards to specific facts. Some of the salient considerations in determining whether an intervening force is a superseding cause of harm to another are found in the Restatement (Second) of Torts, section 442 (1986). These considerations are as follows:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening forces operating independently of any situation created by the actor's negligence, or,

on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; and

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 422 (1965) (adopted in *Humble Oil Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968)).

■ Considering the first Restatement factor, the intervening act of the LTV employee brought about the kind of harm that would have otherwise resulted from Bel–Ton's negligence. The kind of danger that could be foreseen by Bel–Ton, as discussed *supra,* is that the hangar door could be operated by two switches at the same time. This could cause it to operate in an unexpected fashion so that it might close when it was not expected, as it had with the decedent. This factor tends to "favor" a holding that the act of the LTV employee was not an intervening cause.

Regarding the second factor, the decedent's death was not an extraordinary consequence in view of the circumstances existing at the time Bel–Ton did the work. Although the exact manner of the decedent's death was unusual, the fact that an injury occurred was not extraordinary because of the dangerous condition existing. Further, the fact that both switches were operated at the same time on one hangar door was not extraordinary. The switches both controlled the same door, which was apparent from the blueprints. The act of operating one switch while another switch is being operated on the same door at the same time may not necessarily be "normal" because it probably would not be a common occurrence. However, it is a possible and not "abnormal" occurrence. This factor indicates that there was not an intervening cause.

Considering the third factor, the intervening force did not operate independently of, but occurred in "cooperation with," the condition Bel–Ton failed to remove. This factor indicates that there was not an intervening cause.

The fourth factor is in Bel–Ton's favor: The intervening force was due to a third person's act. Regarding the fifth and sixth factors, the act of the LTV employee was wrongful or negligent in that it was an act, operating in conjunction with Bel–Ton's omission, that created an unsafe or dangerous condition. The jamming of the switch caused the hangar door to close unexpectedly, which is dangerous. These factors appear to weigh in on the side of there being an intervening cause.

Regarding the degree of culpability, there was evidence that the LTV employee jammed the switch to cause the hangar doors to act as they did. The employee did not intend to harm anyone. However, he did intend the result of his act: he intended to make the hangar door close in a fashion that would not be expected by others operating the door. This factor indicates that the act of the LTV employee was a cause of the injury, but not an intervening cause.

Considering the Restatement criteria and applicable case law, we conclude that the acts of the LTV employee did not create a new and intervening cause. In the cases involving intervening cause cited by Bel–Ton, the defendant had merely furnished the condition making the injury possible. Then, in each case, either a second act by another person created a new and dangerous condition that injured the plaintiff or the intervening act could not be anticipated or foreseen. *See Humble Oil Co.*, 427 S.W.2d at 315 (act of plaintiff's co-employee in creating false appearance of safety of ladder that co-employee leaned against tank was intervening cause of plaintiff's injury from fall, and defendant's failure to equip tank with ladder not a proximate cause of accident); *Aerospatiale*, 778 S.W.2d at 497 (maker of helicopter whose engine failed not a proximate cause of injury where second engine could safely operate helicopter and intervening cause of pilot shutting off second engine caused crash);

*Southwestern Bell Tel. Co. v. Hardy*, 131 Tex. 573, 117 S.W.2d 418, 420 (1938) (third party was intervening cause of injury where third party situated wire negligently left by defendant telephone company so that it caught plaintiff under the chin and injured him); *Hendricks v. Todora*, 722 S.W.2d 458, 762–63 (Tex.App.—Dallas 1986, writ ref'd n.r.e) (drunk driver's crashing into building was unforeseen intervening cause cutting off liability of landowner for failure to erect curb or barrier); *Wolf v. Friedman Steel Sales, Inc.*, 717 S.W.2d 669, 674–75 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (truck thief's act of abandoning truck in road was intervening cause of accident cutting off liability of truck owner in failing to secure chains on truck).

In the case before us, although Bel–Ton did not technically create the dangerous condition, it failed to remove the east-wall switch and allowed the condition to remain. Further, there was some evidence that Bel–Ton should have known that it is not a sound practice to have two switches control one motor. Therefore, the factor of providing the condition making the injury possible and the added factor of foreseeability of the intervening event were present. *Aerospatiale*, 778 S.W.2d at 497. Rovell testified that Bel–Ton should have known that the blueprints called for both sets of switches to be moved. Therefore, because Bel–Ton knew or should have known that the second set of switches was still in place, that it was supposed to move them, and that it is unsafe to have two sets of switches, it cannot be said that Bel–Ton could not reasonably foresee the possibility that the hangar door might be operated by two switches at the same time. *See Travis*, 830 S.W.2d at 98. There was evidence that, because one switch could override the other and cause the door to operate in an unexpected way, this was an unsafe condition. There was evidence that the intervening act was foreseeable. Further, the act of the LTV employee was in "cooperation with" Bel–Ton's negligent act in leaving the switch in place, in bringing about the injury. *See Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex. 1968) (citing *Gulf. C. & S.F. Ry. Co. v. Ballew*, 66 S.W.2d 659, 661 (Tex.Comm'n App.

1933)). We hold that it was not established as a matter of law that the act of the LTV employee was an intervening cause that cut off the legal effect of Bel–Ton's negligence. *See Teer*, 426 S.W.2d at 612.

After reviewing all the evidence in the record, we hold that there is legally and factually sufficient evidence that Bel–Ton was a proximate cause of the decedent's death. *See Garza*, 395 S.W.2d at 823; *Pool*, 715 S.W.2d at 635. The evidence in the record does not conclusively establish that the act of the LTV employee in jamming the switch was an intervening cause that cut off the legal effect of Bel–Ton's negligence. *See Aerospatiale*, 778 S.W.2d at 497. Because we hold the evidence is legally sufficient to support the jury findings, we further hold that the trial court did not err in failing to grant Bel–Ton's motion for judgment notwithstanding the verdict. *See Sims*, 615 S.W.2d at 861.

Bel–Ton asserts that the evidence established that the LTV employee's act in jamming the switch was the sole cause of the accident and, therefore, the evidence did not support the finding of proximate cause. We have already held that there was evidence that Bel–Ton was a proximate cause of the decedent's death. Campbell's testimony negated the theory of sole cause and raised the issue of whether Bel–Ton was a cause of the accident. *See Goolsbee v. Texas & N.O. R.R. Co.*, 150 Tex. 528, 243 S.W.2d 386, 388 (1951).

Bel–Ton also contends under its third point of error that the trial court erred in failing to grant its motion for new trial because the evidence was factually insufficient to support the finding that Bel–Ton's conduct was a proximate cause of the death of the decedent. A trial court has wide discretion in granting a new trial, and the trial court's discretion will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Balias v. Balias, Inc.*, 748 S.W.2d 253, 257 (Tex.App.—Houston [14th Dist.] 1988, writ denied). We have already held that the evidence is legally and factually sufficient to support the verdict. We hold the trial court did not abuse its discretion in failing to grant the motion for new trial. We overrule Bel–Ton's second and third points of error.

### Error in Submitting Proximate–Cause Issue

Also under its first point of error, Bel–Ton contends that the trial court erred in submitting the question of proximate cause to the jury because Bel–Ton's conduct was not a proximate cause of the death of the decedent as a matter of law. At the charge conference, Bel–Ton objected to the proximate-cause jury question contending that there was no evidence to support it. The trial court overruled the objection.

The trial court shall submit the questions, instructions, and definitions that are raised by the written pleadings and the evidence. *See* Tex.R.Civ.P. 278. We have already held that the evidence did not conclusively establish that Bel–Ton was not a proximate cause of the decedent's death. The issue of whether Bel–Ton was a proximate cause was raised by the evidence. *See id.* Therefore, we hold that the trial court did not err in submitting the issue of proximate cause and overrule Bel–Ton's first point of error. *See* Tex. R.Civ.P. 278.

### Sole–Cause Instruction

In its fourth point of error, Bel–Ton contends that the trial court abused its discretion in failing to submit Bel–Ton's proposed sole-cause instruction because the theory of sole cause was raised by the pleadings and the evidence. Bel–Ton tendered the following sole-cause instruction to the court:

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

The trial court refused the instruction.

It is the trial judge's duty to determine whether the doctrine of "sole cause" has been raised by the evidence. *Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227, 229 (Tex.App.—Houston [1st Dist.] 1983, no writ). Where the pleadings and evidence raise an issue that other acts or

omissions also caused a plaintiff's injuries, it is error to submit an instruction on sole proximate cause. *See id.* at 229. A trial court has considerable discretion in deciding what issues are necessary and proper. *Angelo Broadcasting, Inc. v. Satellite Music Network,* 836 S.W.2d 726, 734–35 (Tex. App.—Dallas, writ denied), *overruled on other grounds, Hines v. Hash,* 843 S.W.2d 464, 469–70 (Tex.1992).

■ Even though a party defendant is not entitled to contribution from the plaintiff's employer, that defendant may still be entitled to a sole-cause instruction regarding the negligence of the employer where that theory is raised by the evidence. *See Dresser Ind., Inc. v. Lee,* 37 Tex.Sup.Ct.J. 67, 70, 1993 WL 433292 (October 27, 1993). Therefore, if the issue of sole cause was raised by the evidence, Bel–Ton was entitled to a sole-cause instruction. *See id.*

■ "Sole proximate cause" means the "only" proximate cause. If there is more than one proximate cause of an event, no single proximate cause can be the sole proximate cause. *Goolsbee,* 243 S.W.2d at 388. Sole and proximate cause often are substantially similar and both embrace one or more acts which are the direct cause of an event. The addition of the word "sole" only emphasizes the single nature of the direct cause of an event. *See Huerta v. Hotel Dieu Hosp.,* 636 S.W.2d 208, 209–10 (Tex.App.—El Paso), *rev'd on other grounds,* 639 S.W.2d 462 (Tex. 1982).

Bel–Ton cites *Ahlschlager v. Remington Arms Co.* in support of its contention that the trial court erred in failing to instruct the jury regarding sole cause. *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832 (Tex. App.—Houston [14th Dist.] 1988, writ denied). In *Ahlschlager,* the defendant contended that plaintiff's injuries were not caused by a defect in its rifle, but instead were caused by a third party's inadvertent shooting of the rifle when he believed it was unloaded. The court noted:

> In this case the evidence did support the instruction on sole cause. Remington implicated the conduct of a third party as being the sole cause of the accident. In-

deed it is difficult to imagine a stronger case for giving an instruction on sole cause.... Remington's theory about [the third party's] conduct painted a classic picture of sole cause.

*Ahlschlager,* 750 S.W.2d at 835.

■ In the present case, the evidence raised an issue regarding whether Bel–Ton was a proximate cause of the injury. The record reflects that there was some evidence in the record that Bel–Ton's omission, and not only the act of the LTV employee, was a cause of the accident. There was no evidence in the record that the act of the LTV employee was the sole cause of the decedent's death. Therefore, because the theory of sole cause was not raised by the evidence, the trial court did not abuse its discretion in failing to instruct the jury regarding sole cause. *Huerta,* 636 S.W.2d at 210. We overrule Bel–Ton's fourth point of error.

### $345,000 Credit

■ In its fifth point of error, Bel–Ton contends that the trial court erred in failing to credit it for the $345,000 paid in settlement by LTV. Bel–Ton contends it is entitled to a credit for money LTV paid for causing the death of the decedent based on the "one satisfaction" rule. *See First Title Co. v. Garrett,* 860 S.W.2d 74, 78 (Tex.1993); *Bradshaw v. Baylor,* 126 Tex. 99, 84 S.W.2d 703, 705 (1935), *overruled on other grounds, Duncan v. Cessna Aircraft,* 665 S.W.2d 414, 432 (Tex.1984). The rule is that when there is "one injury, there can, in justice, be but one satisfaction for that injury." *See Garrett,* 860 S.W.2d at 78. Any party seeking the benefit of a settlement credit has the burden of establishing that it is entitled to such a reduction in the amount of the judgment. *Id.* If the one-satisfaction rule applies, the trial court should credit the award with the settlement if the settlement was for a single injury and both defendants were liable for the same damages. *See Luker v. Arnold,* 843 S.W.2d 108, 119–120 (Tex.App.—Fort Worth 1992, no writ). Chapter 33, the comparative responsibility chapter of the Texas Civil Practice and Remedies Code, does not apply to an action against an employer for exemplary damages arising out of

the death of an employee. TEX.CIV.PRAC. & REM.CODE ANN. § 33.002(b)(1) (Vernon Supp. 1994). We apply the common law "one-satisfaction" rule in this case rather than the law of comparative responsibility contained in Chapter 33. *See id.* Applying the one-satisfaction rule, a defendant against whom a judgment is entered only for compensatory damages for simple negligence may not receive a credit for another defendant's settlement where the settlement is for exemplary damages only. *Cf. Providence Hosp. v. Truly,* 611 S.W.2d 127, 137 (Tex.Civ.App.—Waco 1980, writ dism'd w.o.j.) (in a DTPA case, when settlement was for compensatory damages only, and trebled damages portion of judgment was in nature of exemplary damages, trial court properly credited the settlement proceeds against only that portion of the judgment that represented compensatory damages).[10]

▮ Appellees contend that Bel–Ton is not entitled to a credit under the "one-satisfaction" rule because the settlement funds represented payment for exemplary damages paid by LTV and not for actual damages for simple negligence. The judgment against Bel–Ton did not involve exemplary damages.

In her first amended petition, the plaintiff alleged that both LTV and Bel–Ton were negligent. The plaintiff further alleged that LTV's acts also constituted gross negligence. The settlement agreement is not in the record. This Court is unable to tell from the record whether the settlement was for exemplary damages.

Appellees contend that the settlement is for exemplary damages only that were awarded for the gross negligence action against LTV, because LTV, as the decedent's employer, is not liable on a theory of simple negligence. *See Williams,* 734 S.W.2d at 702 (employer not liable for simple negligence if employee precluded from suing his employer by Texas Worker's Compensation Act). At trial, the plaintiff's attorney said the settlement funds were for the gross negligence claim against LTV. If this statement were true, Bel–Ton would not be entitled to a credit because the judgment against Bel–Ton was for compensatory damages for simple negligence and so it could not obtain a credit for LTV's settlement for exemplary damages only, under the one-satisfaction rule. *Cf. Providence Hosp.,* 611 S.W.2d at 137. However, there is no evidence in the record regarding whether the settlement with LTV was for exemplary damages.

Because the settlement agreement is not contained in the record, we cannot tell whether the settlement by LTV covers the same injury or damages. We cannot say that the trial court erred in refusing the credit. It is the appellant's burden to show reversible error. *See* TEX.R.APP.P. 50(d). We hold that Bel–Ton has failed to show reversible error in the record. *Cf. Luker,* 843 S.W.2d at 119–20 (affirming trial court's refusal to credit defendant for settlement in DTPA case where it was unclear to which injury settlement applied). We overrule Bel–Ton's fifth point of error.

The judgment of the trial court is affirmed.

---

**10.** The holding in *Providence Hospital* was disapproved in *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 & n. 12 (Tex.1991). However, we believe the basic premise cited in *Providence* should apply in cases where Chapter 33 does not apply. In DTPA cases, applying a credit before trebling allows non-settling defendants to reap a windfall. *See Stewart,* 822 S.W.2d at 9. In those cases, all defendants are liable for trebled damages. Therefore, they should all be held liable for the trebled amount. *See id.* In the case at bar, Bel–Ton did not establish that both it and LTV were liable for the same damages.