Waleska BIAGGI, Appellant,

v.

PATRIZIO RESTAURANT INC. d/b/a
Patrizio's, and Patrizio Plano,
Inc., Appellees.

No. 05–03–00681–CV.

Court of Appeals of Texas,
Dallas.

Nov. 24, 2004.

Kevin J. Keith, Kevin J. Keith, P.C., Dallas, for appellant.

Ben Taylor, Jason Keith Fagelman, Walter Andrew Herring, Fulbright & Jaworski L.L.P., Dallas, for appellees.

Before Justices WHITTINGTON, LANG and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Patrizio's filed a motion for rehearing, which we deny. Although we deny the motion, this court's previous opinion of August 6, 2004, is withdrawn, and the following opinion issued.

This case involves an analysis of causation under the Dram Shop Act.[1] *See* Tex. Alco. Bev.Code Ann. § 2.02 (Vernon 1995). Waleska Biaggi sued Patrizio's restaurant under the Dram Shop Act for injuries she suffered in a one-car accident when she was riding as a passenger in a car driven by Julio Rivera. She also sued Rivera. Biaggi alleged that Patrizio's continued to serve alcohol to Rivera when he was obviously intoxicated and that the accident was caused by Rivera's intoxication. Patrizio's filed a motion for summary judgment that urged the court to find that no act or omission of Patrizio's was a proximate cause of Biaggi's injuries because Biaggi's own negligent acts in riding with Rivera, knowing that he was intoxicated, constituted a new and independent cause. The trial court granted the motion. Biaggi non-suited her claims against Rivera and filed this appeal. Because Patrizio's failed to establish, as a matter of law, that Biaggi's claimed negligent acts extinguished the causation between Rivera's intoxication and Biaggi's injuries, we reverse the trial court's summary judgment and remand for proceedings consistent with this opinion.

## SUMMARY JUDGMENT EVIDENCE

Patrizio's attached portions of Biaggi's testimony at Rivera's criminal trial, Biaggi's deposition, Rivera's deposition, and both Biaggi's and Rivera's medical records to its motion for summary judgment.[2] Biaggi stated that she was living with Rivera, but they were not getting along. On the day of the accident, Biaggi took Rivera to work at Patrizio's. Rivera agreed to let Biaggi borrow his car in order to visit a friend. On her way, Biaggi drove the car into a ditch and had to get a tow-truck to pull it out. She never made it to her friend's house because she had to return to Plano to pick up Rivera at Patrizio's at the end of his shift.

When Biaggi arrived at the restaurant, Rivera was sitting at a table with a customer, and they were both drinking hard liquor. Biaggi sat and drank with them. She then told Rivera that she had driven his car into a ditch and gave Rivera the keys to his car. She could tell Rivera had been drinking heavily and that he was intoxicated, but Patrizio's continued to serve him alcoholic beverages. The manager of the restaurant came to the table and asked who was going to drive Biaggi and Rivera home. Biaggi said that she was. But when they were about to leave, Rivera refused to let Biaggi drive because she had driven the car into a ditch earlier that day. Biaggi knew that Rivera was drunk but did not worry about him driving

1. In her first amended petition, Biaggi pleaded both the Dram Shop Act and negligence/gross negligence. Patrizio's did not specifically seek judgment on the negligence actions, but did state in a footnote that the argument also applied to Biaggi's other claims. The court's order granting Patrizio's motion for summary judgment did not specifically address the various causes of action. But the trial court, by way of its order of severance, disposed of all of Biaggi's claims against Patrizio's and made the judgment final and appealable. Biaggi only appeals the summary judgment against her dram shop action, and does not appeal the apparent dismissal of her negligence actions.

2. In its motion for rehearing, Patrizio's complains of this court's recitation of the facts. In that there is a great deal of conflicting evidence in this case, we decline to edit our opinion except in those cases where the facts are undisputed.

because they lived nearby.[3] She acknowledged that she could have walked home, but when asked why she did not, she stated that it was too late. She did not think about getting a cab. She did not have anyone to call for a ride except Rivera's mother, but it was too late to call.

Rivera drove out of the restaurant's parking lot and was soon traveling 70 to 80 miles per hour in a 40–mile–per–hour speed zone. Biaggi screamed at Rivera to slow down, but he did not. About a mile into their trip, Rivera lost control of the car, hopped a curb, spun around, and struck a large commercial pole on the passenger side. After coming to a stop, Rivera saw that Biaggi had a great amount of blood on her head and that she was unconscious. He watched as a rescue team used a blow torch to get Biaggi out of the car. According to medical records, at the time Rivera and Biaggi were taken to the hospital, Rivera was legally intoxicated[4] and Biaggi was not.

Biaggi admitted that she had worked at several restaurants and knew the signs of intoxication. She also knew to ask if there was a designated driver if a person was drunk. Biaggi agreed that she signed a form acknowledging that she watched a video on alcohol awareness for Macaroni Grill, but did not remember actually seeing the video. She testified, though, that it was common knowledge that it is dangerous to drink and drive. She herself had been in car accidents she caused when she was impaired by drug usage. Biaggi admitted that she had made the wrong decision to get into the car with Rivera, but she did not think that "things were going to turn out like this."

## SUMMARY JUDGMENT STANDARD OF REVIEW

The standard for reviewing a summary judgment is well established. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548. A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). To establish that it is entitled to summary judgment on causation, Patrizio's must conclusively negate proximate cause and prove that the superseding action and the harm were not foreseeable. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex.1999). Patrizio's contends that it negated proximate cause because it established, as a matter of law, that because Biaggi told the manager of the restaurant that she would drive, it was not foreseeable that she would get into the car driven by Rivera knowing he was intoxicated. The issue presented is whether Patrizio's negated proximate cause as a matter of law.

## PATRIZIO'S CLAIM OF WAIVER

■ Patrizio's argues that because Biaggi did not include a general *Malooly*

---

3. Biaggi made conflicting statements concerning whether she was worried about Rivera driving home.

4. Rivera's blood alcohol level was measured at .222, almost three times the legal limit.

issue asserting that the trial court erred in granting the summary judgment, we are not authorized to address all possible grounds upon which summary judgment could have been granted or denied. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Consequently, according to Patrizio's, Biaggi has waived error on appeal. However, the only ground for summary judgment raised in Patrizio's motion was lack of proximate cause/new and independent cause. Biaggi, in her two issues, asks the following questions:

1. Did the trial court err in holding that the alleged negligence of Waleska Biaggi negated the proximate cause element of § 2.02 established by the intoxication of Julio Rivera barring Patrizio's Dram Shop liability as a matter of law?

2. Did the trial court err in holding that Waleska Biaggi's momentary lapse in judgment to ride with an intoxicated driver was of such an extraordinary nature as to be unforeseeable to Patrizio's barring its liability for over-serving alcohol to the intoxicated driver (its employee) as a matter of law?

We conclude that Biaggi sufficiently raised the issue of lack of proximate cause/new and independent cause, and therefore did not waive error.

## DRAM SHOP ACT

■ Under Texas law, a provider of alcoholic beverages can be held liable for damages sustained by third parties resulting from a patron's intoxication. Tex. Alco. Bev.Code Ann. § 2.02 (Vernon 1995). The Texas Dram Shop Act is generally the exclusive means for recovery against a provider of alcohol. *Borneman v. Steak &*

*Ale of Tex., Inc.,* 22 S.W.3d 411, 412 (Tex. 2000). The requirements set out in the Dram Shop Act are twofold. First, it must be apparent to the provider at the time the alcohol is provided, sold, or served that the patron consuming the alcohol is obviously intoxicated to the extent that he presents a clear danger to himself and others. Tex. Alco. Bev.Code Ann. § 2.02(b)(1) (Vernon 1995). Second, the intoxication of the patron must be a proximate cause of the damages suffered. *Id.*

### Causation Under the Dram Shop Act

■ For the provider to be held liable under the Dram Shop Act, the intoxication of the recipient of the alcohol must be the proximate cause of the damages suffered. *Id.; Borneman,* 22 S.W.3d at 413. In a recent case, the Texas Supreme Court discusses liability and causation in a dram shop action. *See F.F.P. Operating Partners, L.P. v. Duenez,* No. 02–0381, 2004 WL 1966008 —— S.W.3d —— (Tex. Sept. 3, 2004). In *Duenez,* the court explains that liability is based, in part, upon the provider's own wrongful actions. *Id.* at *4, —— S.W.3d at ——. This is because, in order to hold the provider liable, the factfinder must first determine that the provider made alcohol available to an obviously intoxicated patron whose intoxication caused the plaintiff harm. *Id.* The provider's liability is based on its own wrongful or dangerous conduct, even though the statutorily required causal link focuses on the patron's intoxication. *Id.*

■ The Texas Proportionate Responsibility Act[5] applies to a claim under the Dram Shop Act. *Id.* at *3, —— S.W.3d at ——. Therefore, when the factfinder determines that a provider has violated the

**5.** The Texas Comparative Responsibility Act was amended by Act of May 18, 1995, 74th Leg., R.S. ch. 136, § 1, 1995 Tex. Gen. Laws 971, eff. Sept. 1, 1995, and is now known as the Proportionate Responsibility Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.001 (Vernon 1997).

Dram Shop Act and its patron's intoxication has caused the plaintiff harm, responsibility must be apportioned between the provider and the intoxicated patron, as well as the injured party if there is evidence of contributory negligence. *Id.* at *5, —— S.W.3d at ——. The resulting judgment should aggregate the provider's and patron's liability so that the injured party fully recovers from the provider without assuming the risk of the patron's insolvency. *Id.* The provider may then recover from the patron based upon the percentages of responsibility that the jury assessed between them. *Id.*

■ Although the Texas Supreme Court held in *Borneman* that the provider's act or omission, such as failing to call a taxi for the intoxicated driver, is not the basis for causation, it is now clear that the provider will be held liable for its own wrongful action-selling alcohol to the intoxicated person. *Duenez,* 2004 WL 1966008, at *4, —— S.W.3d at ——; *Borneman,* 22 S.W.3d at 413. But the intoxication of the patron and not the negligence of the provider is still the causation standard established by statute. *Duenez,* 2004 WL 1966008, at *4, —— S.W.3d at ——. Thus, the causation analysis in a dram shop action requires that the fact finder determine whether the injuries resulted from the intoxication of the recipient of the alcoholic beverages.

### New and Independent Cause

■ In its motion for summary judgment, Patrizio's argued that no act or omission of Patrizio's was the "proximate cause" of Biaggi's injuries. Instead, it argued that Biaggi's voluntary and intentional act of riding with Rivera-even though she knew that he was intoxicated and that it was dangerous to ride with him-caused Biaggi's injuries. Patrizio's defined Biaggi's negligence as an intervening, unforeseeable, new and independent cause that negated the "proximate cause" element of Biaggi's claim against Patrizio's as a matter of law.[6] We interpret this as another way of saying that the plaintiff's own negligence bars her recovery. Ordinarily, however, contributory negligence does not bar a plaintiff's claim. Instead, Texas applies the Proportionate Responsibility Act to determine what proportionate amount plaintiff's conduct, if any, contributed to the harm. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.003 (Vernon Supp.2004). The plaintiff may not recover if the factfinder determines that the plaintiff's conduct was more than fifty percent responsible for the harm. Tex. Civ. Prac. & Rem.Code Ann. § 33.001 (Vernon 1997).

■ Additionally, under Texas law, a new and independent cause that extinguishes the liability of a party cannot arise out of an affirmative act of negligence by either the plaintiff or the defendant. *Motsenbocker v. Wyatt,* 369 S.W.2d 319, 324 (Tex.1963); *J.S. Abercrombie Co. v. Delcomyn,* 134 Tex. 490, 494-95, 135 S.W.2d 978, 980-81 (1940); *Lowrimore v. Sanders,* 129 Tex. 563, 566-67, 103 S.W.2d 739, 740-41 (1937); 1 J. Hadley Edgar, Jr. & James B. Sales, Texas Torts and Remedies § 2.03[3][b] (2004). The defensive issue of new and independent cause can be raised and attributed only to some outside agency operating to cause the complained-of injury. *Wiik v. Riggers & Constructors, Inc.,* 592 S.W.2d 16, 18 (Tex.Civ.App.-Beaumont

---

**6.** A "new and independent cause" is defined as "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes ... the im- mediate cause of such injury." *Young v. Massey,* 128 Tex. 638, 641, 101 S.W.2d 809, 810 (1937) (quoting *Phoenix Refining Co. v. Tips,* 125 Tex. 69, 73, 81 S.W.2d 60, 61 (1935)); *James v. Kloos,* 75 S.W.3d 153, 161 (Tex.App.- Fort Worth 2002, no pet.).

1979, writ ref'd n.r.e.). As a result, any negligence by Biaggi, even if it contributed to her injuries, did not act to extinguish Patrizio's liability for injuries caused by Rivera's intoxication and by Patrizio's own alleged act of serving alcohol to an intoxicated patron.

 But even if Biaggi's negligence could constitute an "outside agency," it does not rise to the level of a new and independent cause that extinguishes the alcohol provider's liability. To establish new and independent cause, the movant must establish that an intervening force was not foreseeable as a matter of law. The Texas Supreme Court has adopted the following factors for use in determining whether an intervening force constitutes a superseding or new and independent cause:

(1) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(2) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(3) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(4) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(5) the fact that the intervening force is due to a third person's act which is wrongful toward the other and as such

subjects the third person to liability to him;

(6) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Pena,* 990 S.W.2d at 754 (applying Restatement (Second) of Torts § 442); *Humble Oil & Ref. Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968).

We conclude, in applying the *Pena* factors, that Patrizio's did not negate proximate cause as a matter of law. First, Biaggi's decision to get into the car knowing that her boyfriend was intoxicated brought about the same harm that would otherwise have resulted from Rivera's intoxication-injury either to himself or to a third party due to a car wreck.[7] Second, the act of getting into Rivera's car, even though she knew the risks involved, may seem extraordinary to some people, maybe even to most people. But considering Biaggi's tenuous relationship with Rivera, Rivera's anger at her for driving his car into a ditch, Biaggi's drinking, Rivera's possession of the keys to the car, and the early morning hours when Biaggi's options for getting home were limited, we cannot say, as a matter of law, that Biaggi's actions were extraordinary rather than somewhat normal in view of the circumstances existing at the time. Third, we cannot conclude, as a matter of law, that Biaggi's negligence operated independently of the situation created by Rivera's intoxication and Patrizio's alleged act of serving an intoxicated Rivera, and that the situation was not the normal result of both Patrizio's and Rivera's actions. Factors four, five, and six do not apply because they refer to the conduct of a third party and Biaggi is not a third party in this claim.[8]

---

**7.** Driver error is a commonly understood and foreseeable consequence of serving intoxi-

cants to an already obviously intoxicated person. *Pena,* 990 S.W.2d at 755.

**8.** A third party's criminal conduct has been

### Caselaw Cited by Patrizio's

Patrizio's argues that intervening negligent acts can negate the foreseeability element of proximate cause, citing *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 497 (Tex. App.-Dallas 1989, writ denied), *Coleman v. Equitable Real Estate Inv. Mgmt., Inc.*, 971 S.W.2d 611, 617 (Tex.App.-Dallas 1998, pet. denied), and *Wolf v. Friedman Steel Sales, Inc.*, 717 S.W.2d 669, 673–74 (Tex. App.-Texarkana 1986, writ ref'd n.r.e.). It contends that the fact that a person observes or should observe a particular danger is an intervening act that interrupts the natural sequence of the events and cuts off the legal effect of the negligence of the initial actor. *Aerospatiale*, 778 S.W.2d at 497. Patrizio's position is based upon the premise that it is not reasonable to foresee or expect that one who actually becomes cognizant of a dangerous condition in ample time to avert the injury will fail to do so. *Id.*

First, we note that *Aerospatiale, Coleman,* and *Wolf* are not dram shop cases. Consequently, they address the proximate cause issue as must be established within the context of a conventional negligence action rather than a dram shop action.

*See Duenez,* 2004 WL 1966008, at *4, —— S.W.3d at ——. Second, the *Pena* test was not applied in either *Aerospatiale* or *Coleman,* and the *Wolf* court applied the *Pena* test but found that all factors but the first weighed in favor of finding the intervening force to be a "new and intervening" cause.[9] Third, Patrizio's cases are distinguishable from the case before us.

In *Aerospatiale,* this court considered the issue of proximate cause in the crash of a twin-engine helicopter. *Aerospatiale,* 778 S.W.2d at 496. After take-off, the helicopter's engine cover separated from the aircraft and snagged a coiled steel cable, taking that engine off-line as a power source for the aircraft. The aircraft automatically shifted the power requirements to the other engine. The pilot ignored procedures outlined in the operator's manual to isolate a defective engine and shut off the fuel supply to the operating engine. The evidence at trial showed that one engine going off-line was not, in itself, an emergency situation. The helicopter was designed to fly on only one engine, and it did so. *Id.* at 495–97. If the pilot had followed the proper procedures, he could have landed safely at sev-

held to be a superseding cause that extinguished causation, such as Patrizio's argues has occurred here. However, those cases are not applicable because they involve criminal conduct that is so extraordinary it could not be foreseeable, and the courts generally apply negligence, not dram shop causation standards. *See Skipper v. U.S.*, 1 F.3d 349 (5th Cir.1993) (holding that club could not have foreseen that former boyfriend would murder ex-girlfriend as result of alcohol consumed at club); *Pena*, 990 S.W.2d at 755 (holding that alcohol provider, who served alcohol to underage drinkers in violation of § 106.03(a) of the Texas Alcoholic Beverage Code, was not responsible for brutal rape and murder of two girls); *Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 824–25 (Tex.App.–Houston [14th Dist.] 2000, no pet.) (holding, in action under Dram Shop Act, that alcohol provider

was not responsible when intoxicated customer murdered man after getting into traffic altercation with victim). *But see S & A Beverage Co. of Beaumont, No. 2 v. DeRouen*, 753 S.W.2d 507, 510–11 (Tex.App.-Beaumont 1988, writ denied) (holding that commission of sexual assault did not constitute new and independent cause that extinguished causation, thus it did not cut off liability of alcohol provider).

9. The *Wolf* court uses the terms "new and independent cause," "superseding cause," and "new and intervening cause" to describe an intervening act that "interrupts the natural sequence of the events and cuts off the legal effect of the negligence of the initial actor." *See Wolf*, 717 S.W.2d at 673–74.

eral different locations and the accident would not have happened. *Id.* at 496. We held that the cover separation was a prior cause which could not be the basis for an action for damages. It did nothing more than furnish a condition or give rise to the occasion which made the injury possible. The injury was the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition.[10] *Id.* at 497.

In *Coleman,* a family brought a wrongful death suit against a shopping center property manager after their son, who was an employee of a video store located in the shopping center, was murdered there. *Coleman,* 971 S.W.2d at 614. Evidence in the case established that the decedent employee deliberately unlocked a door to the video store, despite having been told earlier in the day that doing so violated store safety policy. He allowed someone to enter after the store had closed. The unknown person murdered the employee in the course of a robbery. *Id.* at 613. The court held that the employee's act of opening a locked door after store hours to allow someone to enter in violation of a known store safety policy was "not foreseeable [to defendant] and [was] of such a character as to break the natural sequence of events, thereby creating a new and independent cause." *Id.* at 618. As with *Aerospatiale,* the decedent's conduct was a superseding cause because it replaced the defendant's negligence as the legal cause. *See id.*

In *Wolf,* a truck owner locked his truck and left the keys in the office. However,

he left the chains, which were used to secure the load when the truck was loaded, unlocked. It was not safe to leave the chains unlocked during travel because they could possibly fall and sever the airbrake hose, which in turn would cause the brakes to lock. Someone stole the truck and abandoned it on the highway after the chains fell and severed the airbrake hose. A different person in another vehicle ran into the truck and was killed. *Wolf,* 717 S.W.2d at 671. The Texarkana court held that, although the truck was left in a condition in which it was dangerous to drive, the thief's driving the vehicle in this condition and his subsequent acts constituted a new and intervening cause. *Id.* at 675.

We distinguish *Aerospatiale* from the case before us because the event set in motion by the helicopter manufacturer would not have caused harm, absent the conduct of the decedent. *See Aerospatiale,* 778 S.W.2d at 497. And in *Coleman,* the conduct of the employee actually created the dangerous situation that caused the harm. *See Coleman,* 971 S.W.2d at 614. In each case, the party being sued had prescribed specific conduct and rules that, if followed, would have avoided the harm. The harm that occurred was not "foreseeable" because it was not the natural consequence of what the defendant set in motion or failed to do. And in *Wolf,* the owner of the truck had done nothing that would have resulted in the harm that occurred absent the intervention of some third party; thus, the third party's conduct replaced the truck owner's alleged negligence as the legal cause of the accident.[11] *See Wolf,* 717 S.W.2d at 675.

10. We did not use the terms "new and independent cause" or "superseding cause." After our analysis, we simply concluded that "[t]he pilot's actions in [failing to follow proper procedures] were not foreseeable by Aerospatiale."

11. Patrizio's also cites *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997) and *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring) for the proposition that "no rational legislature could have intended dram shop liability" in a case where a

In the case before us, the following facts are undisputed: Biaggi did not cause Rivera's intoxication; Biaggi's act of getting into the car with Rivera did not cause the accident; Biaggi's act of telling Patrizio's management that she was going to drive her boyfriend and herself home did not cause the accident; and Rivera's intoxication was a "cause-in-fact" of the accident and Biaggi's injuries. Also, Patrizio's has not argued that Rivera would not have been in that one-car accident but for Biaggi's presence in the car with him. Thus, Patrizio's did not establish, as a matter of law, that the harm that occurred was not a natural and "foreseeable" series of events resulting from Rivera's intoxication and from Patrizio's alleged act of serving alcohol to an intoxicated Rivera. Under these particular circumstances, we conclude that Patrizio's did not negate proximate causation under the Dram Shop Act as a matter of law.

▎ Further, even if Biaggi's conduct was unforeseeable, the intervention of an unforeseen cause does not necessarily mean there is a new and independent cause of such a character as to extinguish causation and relieve the original tortfeasor of liability. *See Henry v. Houston Lighting & Power Co.*, 934 S.W.2d 748, 753 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Bel–Ton Elec. Serv., Inc. v. Pickle*, 877 S.W.2d 789, 796 (Tex.App.-Dallas 1994), *rev'd on other grounds*, 915 S.W.2d 480 (Tex.1996); *Brownsville Med. Ctr. v. Gracia*, 704 S.W.2d 68, 73 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.). An intervening cause of plaintiff's injury, even

if unforeseeable, may be a concurring cause if the chain of causation flowing from the defendant's original negligence is continuous and unbroken. *Hall v. Huff*, 957 S.W.2d 90, 98 (Tex.App.-Texarkana 1997, pet. denied); *Henry*, 934 S.W.2d at 753; *Bel–Ton Elec. Serv., Inc.*, 877 S.W.2d at 796; *Gracia*, 704 S.W.2d at 73. Consequently, we cannot hold, as a matter of law, that Patrizio's and Rivera's conduct did not cooperate to bring about Biaggi's injuries,[12] that Patrizio's alleged wrongful act of serving alcohol to an intoxicated Rivera simply furnished the condition or gave rise to the occasion which made the injuries possible or that the chain of causation was not continuous and unbroken up until the wreck.

### Proportionate Responsibility

As was true in *Smith v. Sewell*, 858 S.W.2d 350, 355 (Tex.1993), wherein the supreme court held that the intoxicated plaintiff himself had a possible claim under the Dram Shop Act, Biaggi's claim is not automatically extinguished because she knew Rivera was drunk or told Patrizio's manager she would drive home. Nor is Biaggi's claim automatically extinguished on any other basis argued by Patrizio's that Biaggi's actions, rather than Rivera's intoxication, were the proximate cause of her injuries. Instead, Biaggi's claims are subject to a comparative analysis which will allow the factfinder to determine whether and to what extent Biaggi's conduct caused her own injuries. *See Duenez*, 2004 WL 1966008, at *3, —— S.W.3d at ——. If the jury finds that Biaggi's per-

---

passenger lied about her designated driver status, disregarded a known dangerous condition, and voluntarily and recklessly put herself in harm's way. Patrizio's position is unsupported by caselaw construing the Dram Shop Act, and its attempt to analogize DTPA and product liability actions with the case before us is unpersuasive.

12. If the negligence of both parties proximately caused the injuries, then the parties' relative share of responsibility would have to be determined. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon Supp.2004).

centage of responsibility is greater than fifty percent, she will not recover. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.001 (Vernon 1997).

## CONCLUSION

We hold that Patrizio's failed to show that proximate causation was extinguished as a matter of law. Instead, any claim that Biaggi's negligence contributed to her own injuries must be evaluated under the Texas Proportionate Responsibility Act. Accordingly, we reverse the trial court's summary judgment for Patrizio's and remand for proceedings consistent with this opinion.