**HUMBLE OIL & REFINING COMPANY,**
**Petitioner,**

v.

**John D. WHITTEN, Respondent.**

**No. B–361.**

Supreme Court of Texas.

April 17, 1968.

Rehearing Denied May 29, 1968.

Thompson, Knight, Simmons & Bullion, Pinkney Grissom, Timothy E. Kelley and John A. Gilliam, Dallas, for petitioner.

Smith, Johnson & McDowell, Howard S. Smith, Sulphur Springs, Ivan Alexander, Jr., Emory, Woodrow H. Edwards, Mount Vernon, for respondent.

POPE, Justice.

Plaintiff, John David Whitten, recovered a judgment upon a jury verdict against Humble Oil & Refining Company for injuries he sustained in a fall from the top of an oil storage tank. Humble had supplied the tank to Delta Drilling Company, Whitten's employer. The tank when delivered by Humble to Delta was not equipped either with a ladder or a gauge. The court of civil appeals affirmed the judgment of the trial court. 415 S.W.2d 287. In our opinion, all of the evidence shows that plaintiff's fall was the result of a new and intervening cause. We reverse the judgment of the courts below and render judgment that plaintiff take nothing.

In January of 1962 Humble engaged Delta Drilling Company as an independent contractor to drill an oil well in Rains County. Humble agreed to supply Delta with the necessary mud conditioners used in drilling and completing the well. Humble, as a part of its contract, was obligated to furnish diesel oil additive. To contain the additive, Humble delivered a portable steel tank to the Delta drilling site some time about March 1, 1962. The tank was an old one and had often been moved from one drill site to another. It was cylindrical, sixteen feet high and about eight feet across. On top of the tank and about six inches from one side, there was a dome with a hatch fitted over the top. The tank was not

equipped with a ladder, but it had brackets welded to its side to which a steel ladder could be bolted. The tank had no gauge by which one on the ground could determine the level of the fluid inside the tank. Humble, the supplier, knew all of these facts.

A few days before the plaintiff was hurt Jack Turner, another employee of Delta, constructed a wooden ladder. Turner worked on the day shift. He testified that he made the ladder from lumber he picked up around the drilling site. He set the ladder against the tank and climbed up the ladder on several occasions to check the level of the additive in the tank. He said that he balanced himself as he went up the ladder "to keep it from shifting off there with me and hoped I made it until I get up on top to look in it." Turner said that he tried to tie the top of the ladder to the tank but was unable to locate anything on the tank to which he could secure the end of a rope. He said that he tied one end of a strand from an old rope to the ladder, but he laid the other loose end of the rope on top of the ladder.

Plaintiff, Whitten, worked during the night shift. At about 3:30 in the morning of March 11, a transport tank arrived at the drilling site loaded with diesel oil additive. Delta's driller ordered Whitten to assist in unloading the additive from the truck to the tank. The additive was pumped from the truck to the tank through a hose attached near the bottom of the tank, and Whitten's job was to advise the trucker when the tank was full. To do this it was necessary for him to climb to the top of the tank and look down the dome of the tank to the fluid.

Whitten, when told to aid in this work, first went to the toolhouse and obtained a lantern which he described as a big round lantern with a square battery. He then walked to the tank against which the wooden ladder was leaning. He moved the ladder about four inches so the bottom legs would rest in a crack in the wooden flooring. He estimated the crack to be about two inches deep. He testified that he then directed the light to the top of the ladder "to see if the ladder was fastened at the top." He said the light was "pretty bright." When asked what he saw at the top of the ladder, he said it "looked like a rope on it, tied around a little pipe that was sticking up and tied onto the ladder." The top of the ladder extended about a foot above the top of the tank.

Whitten then ascended the ladder holding the light in his right hand. The top rung of the ladder was about three inches below the top of the tank. He climbed to the top, and with his left foot on the ladder, took a step with his right foot to get on top of the tank. At that time, according to Whitten, "the ladder slipped, the line broke or something," and he fell to the decking below.

The jury found that Humble's failure to equip the tank with a steel ladder rendered the tank unsafe for use by the plaintiff which was negligence and a proximate cause and also found that Humble's failure to equip the tank with a gauge was negligence and a proximate cause. The court defined new and independent cause as a part of the proximate cause instruction. See, Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 383–384 (1952). The jury refused to make these findings: Whitten had full knowledge about the ladder equipment of the tank, Whitten failed to keep a proper lookout, his failure to determine that the ladder was secured to the tank was negligence, his failure to secure assistance of someone to hold the ladder was negligence, his failure to secure the top of the ladder was negligence, and his attempt to step from the top rung of the ladder onto the top of the tank was negligence.

Humble attacks the jury findings by numerous points, urging that it owed no duty to provide a tank equipped with either a ladder or a gauge and that there was no evidence to support the findings on the special issues. For the purposes of this decision, we shall assume that the evidence established a duty relationship between Humble and Whitten, and that Humble was negligent. See Ellis v. Moore, 401 S.W.2d 789

(Tex.1966); Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953). We assume further that Humble could foresee the likelihood of the intervention of the third party who built the wooden ladder. The central question, however, which this case presents, is whether Humble's negligence was superseded by the additional intervening act of Turner in leaving the unsecured rope lying atop the tank to give the false appearance of safety.

Plaintiff relies upon cases which hold a defendant liable upon principles of concurring negligence and which deny the presence of a new and independent cause which superseded a defendant's act. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957); Walker v. Burgdorf, Inc., 150 Tex. 603, 244 S.W.2d 506, 510 (1952); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355 (1951); McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442, 447 (1941); Missouri-Kansas-Texas Ry. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474 (1939).

The defendant urges that there was a new and independent cause and relies upon such cases as Paris & G. & N. Ry. Co. v. Stafford, 53 S.W.2d 1019 (Tex.Com.App.1932, jdgmt. adopted); Union Stockyards v. Peeler, 37 S.W.2d 126 (Tex.Com.App.1931, holding approved); Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 225, 38 S.W. 162 (1896); Magnolia Petroleum Co. v. Cocke, 3 S.W.2d 139 (Tex.Civ.App.1928, writ ref.).

The cases cited by the parties declared general principles which are applied to factual situations unlike the one presented here. In deciding whether an act is a concurring or a new and independent cause we confront the difficulty of applying familiar principles to specific facts. Some of the criteria which aid decisions such as this, are found in section 442, Restatement, Second, Law of Torts:

"The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

The criteria stated in clauses (c), (d), and (e) of the quoted section require the conclusion that Whitten's accident was the result of a new and intervening cause. The precedent which appears most analogous to this case is Southwestern Bell Telephone Co. v. Hardy, 131 Tex. 573, 117 S.W.2d 418 (1938). The defendant Telephone Company was advised that it should remove a telephone wire from a house that was going to be wrecked. It delayed doing so, and a third party disconnected the wire from the house and tied the loose end to a porch post. The wire was so low that it caught plaintiff under his chin and dragged him off a truck in which he was riding down the street. The jury found the defendant Telephone Company was negligent, but this court held the third party's act in creating the dangerous condition which was unknown to the defendant, was a new and independent cause of the accident.

Turner, the third-party actor, as well as Whitten, gave undisputed testimony about the cause of the accident. Turner said that he tied some strands of rope to the top of the ladder but laid the loose end of the rope down upon the top of the tank. Whitten testified that he made a good inspection of the top of the ladder for the specific purpose of determining whether it was tied. He said that, from his inspection, the rope appeared to be securely tied to the top of the tank, but for which fact he would have obtained assistance in climbing the ladder.

We conclude that Humble's original negligence was superseded by a third party's act which created a new and hidden dangerous condition which a specific inspection did not reveal. Whitten's act of climbing the ladder was not dependent upon the lack of a ladder; it was dependent upon Turner's independent act of creating the illusion of safety.

The judgments of the courts below are reversed and judgment is rendered that the plaintiff, Whitten, take nothing.