**JAI JALARAM LODGING GROUP, L.L.C. d/b/a Comfort Inn– Alvin, Appellant,**

v.

**Rhonda E. LERIBEUS and Charles W. Leribeus, Appellees.**

**No. 08–04–00192–CV.**

Court of Appeals of Texas, El Paso.

Feb. 9, 2006.

Jack McKinley, Ramey, Chandler, McKinney & Zito, P.C., Houston, for appellant.

Gene S. Hagood, Hagood & Neumann, L.L.P., Alvin, for appellees.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

The Jai Jalaram Lodging Group, L.L.C. d/b/a Comfort Inn–Alvin appeals from a judgment in a negligence suit, where a jury found Appellant partially responsible for the injuries Appellee Rhonda LeRibeus sustained in an armed robbery, kidnaping, and aggravated assault that began in the parking lot of its Comfort Inn motel. On appeal, Appellant argues that there is no evidence or insufficient evidence that this crime was foreseeable as required to establish a legal duty for it to protect Mrs. LeRibeus from the criminal acts of third parties. Further, Appellant contends the evidence was legally or factually insufficient to support the jury's finding that it proximately caused Mrs. LeRibeus' injuries. We find that we must reverse and render a take-nothing judgment.

In 1998, Daxaben Bhakta, her husband Mukeshbhai Bhakta, and two others, formed Jai Jalaram Lodging Group, L.L.C. for the purposes of owning and operating a Comfort Inn motel in Alvin, Texas, a forty-unit motel franchised through Choice Hotels International, Inc. The Comfort Inn–Alvin opened in March 2000 and was a completely new facility.

In February 2001, Mrs. LeRibeus was staying at Appellant's motel with relatives and in town to visit her ailing father. After spending the day at a hospital with her father, she returned in the evening and parked her car in the motel parking lot in a space between two cars, across from the side entrance of the motel in a well-lit area. As she got out of her car, a man coming from the back of the parking lot near the garbage dumpster, was walking toward her car. As he walked past her car, Mrs. LeRibeus was hit with a baseball bat by an accomplice. Mrs. LeRibeus was hit several times before she was threatened with a gun and forced into her car. One of the men took the car keys from her and they drove out of the parking lot. The assailants demanded her jewelry, drove directly to a bank ATM machine, demanded the pin numbers for her credit and bank cards and then withdrew substantial sums of money from her accounts. Mrs. LeRibeus was left in her vehicle after her assailants were picked up by other persons in another car. She was found by a passing motorist who took her to the hospital for emergency treatment. At the time of the attack, Mrs. LeRibeus' assailants, Beerien Crouch and DeCarlos Garrett, were already wanted for a series of similar armed robberies they had committed in Houston. Crouch confessed to the crime and implicated Garrett. Crouch pled guilty and was sentenced to two concurrent sentences of forty-five years' imprisonment while Garrett received stacked sentences of forty-five years and ninety-nine years' imprisonment.

Mrs. LeRibeus and her husband sued Appellant and Choice Hotels International, Inc., alleging that the defendants were negligent in failing to provide proper and adequate security and safety measures, which proximately caused Mrs. LeRibeus' injuries.[1] Beerien Crouch and DeCarlos Garrett were later added as defendants to the suit, but are not parties on appeal. The jury found that Appellants' negligence proximately caused Mrs. LeRibeus' injuries, finding it 24 percent responsible for the occurrence. The judgment rendered on the jury's verdict awarded Mrs. LeRibeus $288,131.49 and Mr. LeRibeus $28,813.14 against Appellant.

We first address Appellant's contention that there was no evidence to establish that the particular crime against Mrs. LeRibeus was foreseeable, thus no duty on the part of Appellant to protect her from the criminal acts of a third party. The essential elements of a negligence claim are: the existence of a legal duty; a breach of that duty; and damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). In general, a person has no legal duty to protect another from the criminal acts of a third person. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). However, one who controls the security and safety of a premises does have a duty to use ordinary care to protect invitees from criminal acts

1. Choice Hotels International, Inc., the franchisor, was dismissed from the lawsuit without prejudice on October 2, 2002.

of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Timberwalk*, 972 S.W.2d at 756. Whether a duty exists is a question of law for the court to decide. *Id.*

■ Foreseeability requires only that the general danger be foreseeable, not the exact sequence of events that produced the harm. *Id.* When the general danger is the risk of injury from criminal activity, the evidence must reveal specific previous crimes on or near the premises in order to establish foreseeability. *Timberwalk*, 972 S.W.2d at 756. A duty exists only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable. *Id.* Whether such risk was foreseeable must not be determined in hindsight but rather in light of what the premises owner knew or should have known before the criminal act occurred. *Id.* at 757. Factors to be considered in determining foreseeability of the occurrence of certain criminal conduct are: (1) whether any criminal conduct previously occurred on or near the property; (2) how recently the criminal conduct occurred; (3) how often criminal conduct occurred; (4) how similar the conduct was to the conduct on the property; and (5) what publicity was given to the occurrences to indicate that the landowner knew or should have known about them. *Id.*

### Proximity

■ For a landowner to foresee criminal conduct on property, there must be evidence that other crimes have occurred on the property or in its immediate vicinity. *Timberwalk*, 972 S.W.2d at 757. Criminal activity occurring farther from the owner's property bears less relevance because crime rates may be expected to vary significantly within a large geographic area. *Id.* Evidence of remote criminal activity, however, may indicate that crime is approaching an owner's property, but such evidence must be especially strong and must show that the risk of criminal conduct on the owner's property is not merely increasing but has reached a level as to make crime likely. *Id.* Thus, for a risk to be foreseeable, there must also be evidence of criminal activity within the specific area at issue, either on the landowner's property or closely nearby. *Timberwalk*, 972 S.W.2d at 757.

### Recency/Frequency

■ Foreseeability also depends on how recently and how often criminal conduct has occurred in the past. *Timberwalk*, 972 S.W.2d at 757–58. The occurrence of a significant number of crimes within a short time period strengthens the claim that the particular crime at issue was foreseeable. *Id.* at 758. On the other hand, the complete absence of previous crimes, or the occurrence of a few crimes over an extended time period, negates the foreseeability element. *Id.*

### Similarity

■ The previous crimes must be sufficiently similar to the crime in question as to place the landowner on notice of the specific danger. *Timberwalk*, 972 S.W.2d at 758. The prior crimes need not be identical. *Id.* A string of assaults and robberies in an apartment complex make the risk of other violent crimes, like murder and rape, foreseeable. *Id.* On the other hand, a spate of domestic violence in the complex does not portend third party sexual assaults or robberies. *Id.*

### Publicity

■ The publicity surrounding the previous crimes helps determine whether a landowner knew or should have known of a foreseeable danger. *Timberwalk*, 972

S.W.2d at 758. Actual notice of past incidents strengthens the claim that future crime was foreseeable. *Id.* However, unreported criminal activity on the premises is no evidence of foreseeability. *Id.* at 758–59. Property owners bear no duty to regularly inspect criminal records to determine the risk of crime in the area. *Id.* at 759. On the other hand, when the occurrence of criminal activity is widely publicized, a landlord can be expected to have knowledge of such crimes. *Id.*

The *Timberwalk* factors—proximity, recency, frequency, similarity, and publicity—must be considered together in determining whether criminal conduct was foreseeable. *Timberwalk,* 972 S.W.2d at 759. We now review the evidence presented in light of the *Timberwalk* factors to determine whether Appellant owed Mrs. LeRibeus a legal duty to protect her from third-party criminal acts on its property.

▇▇▇ LeRibeus' expert witness, Dr. David Salmon, testified that in his crime analysis, he used the calls for service to the Alvin Police Department occurring in a one-mile radius of the Comfort Inn in the two years and two months preceding the criminal conduct against Mrs. LeRibeus. His statistics showed that criminal activity in the area had dramatically increased from 1999 to 2000. The police call reports for 1999 showed that the following crimes, which Dr. Salmon considered relevant, were reported within the one-mile radius of the Comfort Inn:

- 212  thefts;
- 126  criminal mischief offenses;
- 71  assaults;
- 13  sexual assaults;
- 6  aggravated assaults;
- 43  burglaries of a motor vehicle;
- 1  robbery;
- 23  unauthorized use of a motor vehicle offenses;
- 11  terroristic threats;
- 59  criminal trespass offenses; and
- 1  weapons offense.

For 2000, the call reports showed:

- 288  thefts;
- 149  criminal mischief offenses;
- 76  assaults;
- 9  sexual assaults;
- 1  aggravated assault;
- 83  burglaries of a motor vehicle;
- 9  robberies;
- 36  unauthorized use of a motor vehicle offenses;
- 28  terroristic threats;
- 64  criminal trespass offenses;
- 1  weapons offense;
- 5  gun incidents; and
- 2  deadly conduct offenses.

In the two months preceding the attack on Mrs. LeRibeus, the call reports showed that in particular, there had already been calls to the police concerning twenty-nine thefts, sixteen criminal mischief offenses, thirteen assaults, one sexual assault, seven burglaries of a motor vehicle, and three robberies. Dr. Salmon excluded assaults related to family violence disturbances. Dr. Salmon limited his data to the call reports because this information would have been the only information on criminal activity readily available to Appellant for nonlitigation purposes prior to the crimes against Mrs. LeRibeus. Dr. Salmon also explained that he limited his statistical analysis to the types of offenses that could have been related or charged for the criminal conduct in the LeRibeus case. Based on his analysis, it was Dr. Salmon's opinion that given the dramatic increase in criminal activity of the type that occurred to Mrs. LeRibeus, the general danger of this

event on Appellant's property was foreseeable.

Houston Police Department Detective Robert Sherrouse was the lead investigator for a series of robberies in Houston that involved a comparable method of operation. He was contacted by the Alvin police regarding Mrs. LeRibeus' case, which appeared similar in nature to the robbery cases he was investigating. In fact, photographs of one of Mrs. LeRibeus' assailants taken from the ATM location in Alvin led to the arrest of one of the suspects in the cases. According to Detective Sherrouse, the criminal conduct that was committed against Mrs. LeRibeus could fall within the following offenses: disorderly conduct, criminal mischief, terroristic threats, unlawful restraint, unauthorized use of a motor vehicle, theft, assault, aggravated assault, robbery, aggravated robbery, attempted murder, attempted capital murder, kidnaping, aggravated kidnaping, extortion, and burglary. He stated that all of the crimes were a part of the event that occurred to Mrs. LeRibeus within a short period of time.

Dr. Merlyn Moore, Appellant's expert witness, relied on incident reports rather than calls for service in his analysis, because they more accurately reflected the occurrence of actual crimes at the property and the two motels in close proximity to the Comfort Inn. From the time that the Comfort Inn opened in March 2000, to the time that Mrs. LeRibeus was attacked in February 2001, the following incidents of criminal activity occurred at the Comfort Inn: (1) a criminal mischief incident, involving someone jumping on the hood of a car; (2) theft of property from the motel rooms of various guests on one particular date in November 2000; and (3) theft of money from the register, for which Mrs. Bhakta chose not to file a complaint.[2]

With regard to similar crimes, Dr. Moore looked for violent crimes on the property or in the immediate vicinity, which he limited to the neighboring properties, the Best Western Motel and the Country Hearth. He did not include property crimes like theft, burglary of habitation, or burglary of a motor vehicle in his analysis. Further, Dr. Moore also excluded the crimes of criminal mischief, unauthorized use of a motor vehicle, terroristic threats, criminal trespass, weapons offense, and assault because he did not consider them violent crimes. Dr. Moore determined that no similar violent crime had occurred at the Comfort Inn since it had opened and in addition, no violent crimes had occurred at either adjoining property.[3]

Dr. Moore disagreed with Dr. Salmon's use of a one-mile radius in determining the proximity of crime for the Comfort Inn. Even accepting Dr. Salmon's one-mile radius as the parameter, Dr. Moore found that from 1999 to February 2001, there were only forty calls for service related to violent crimes. Incident reports revealed that in six of the calls, no incident report was filed. Twenty-two of the calls were domestic interpersonal incidents and one was a misdemeanor assault. Dr. Moore found that only nine were stranger initiated violent crimes in the one-mile radius. Dr. Moore determined that this figure showed the infrequency of violent crime in

2. Dr. Salmon's crime analysis showed that call reports showed two motor vehicle thefts, one burglary of a motor vehicle, one criminal mischief offense (someone jumping on someone else's car), and two thefts at the Comfort Inn property since it had opened. There were

no incident reports filed for the two motor vehicle theft and burglary calls for service.

3. Dr. Moore recalled that one crime had occurred on one of the adjoining properties or one crime on each of the properties, but none of the crimes were violent crimes.

the extended area around the Comfort Inn. Further, the violent crimes he did identify were dissimilar to the particular crime against Mrs. LeRibeus and did not suggest in any way that the violent crime against Mrs. LeRibeus was going to occur. With respect to publicity, Dr. Moore did not consider it a factor in this case because the property owners did not know anything was happening and only calls for service were available in a non-litigation matter, not the incident reports. According to Dr. Moore, Alvin is not a high crime city and there was no crime problem at the Comfort Inn.[4] Based on his overall analysis, Dr. Moore opined that the attack on Mrs. LeRibeus was not reasonably foreseeable.

Mrs. Bhakta, a general manager of the motel, testified that she did not subscribe to the local newspaper and did not know of any crimes at the neighboring motels. From March 2000 to February 2001, there were minor crimes at the Comfort Inn, specifically, someone walking on a car, theft from a guest's room, and theft from the cash register by an employee. In addition, on cross-examination Detective Sherrouse testified that he lived in Alvin for seven years, was somewhat familiar with the crime in the Alvin area, and thought the type of crime against Mrs. LeRibeus was not the type one would expect to happen in Alvin very often.

The evidence shows that within the two years and two months prior to the attack on Mrs. LeRibeus, police call reports within a one-mile radius of the Comfort Inn showed a rise in criminal activity from 1999 to February 2001. While Dr. Salmon's analysis was based on a broad definition of relevant call reports, there was no evidence that any of the purported crimes involved the degree and severity of the crime in question. Further, the figures generated to show a rise in crime, show only a slight increase, and thus, such evidence is not strong enough to show that the risk of criminal conduct on Appellant's property had reached a level as to make crime likely. *See Timberwalk*, 972 S.W.2d at 757.

Incident reports analyzed by Dr. Moore showed that only forty of these calls for service in the one-mile radius were related to violent crimes, twenty-two of which involved domestic disturbances. Evidence of criminal activity closer to Appellant's property holds greater relevance and, in this case, the evidence showed that no violent crimes had ever occurred at the Comfort Inn and that no violent crimes had been reported at the neighboring motels in over two years. Several property crimes, however, had occurred at the Comfort Inn. Property crimes may expose a dangerous condition that could facilitate personal crimes. *Timberwalk*, 972 S.W.2d at 758. As noted in *Timberwalk*, property crimes, such as repeated burglaries at a targeted apartment complex, may increase the risk of violent personal crimes like sexual assault at the same location, but in this case there was no evidence that the few property crimes occurring at the Comfort Inn, at the neighboring motels, or even those in the surrounding area, were occurring with any notable frequency or were of the kind that would have facilitated the violent personal crimes committed against Mrs. LeRibeus on Appellant's property.

With regard to publicity surrounding previous crimes, there was no evidence

---

4. Dr. Moore also stated that according to the Uniform Crime Reports from the Texas Department of Public Safety, the crime rate for Alvin is about 3.2 per 1,000 persons. The crime rate for Houston was about 11 per 1,000, with the national average at between 5 and 6 per 1,000.

that criminal activity within the one-mile radius of the Comfort Inn, as indicated by either police call reports or incident reports, was widely publicized in the media or otherwise known to Appellant. Rather, it was undisputed that for Appellant to have knowledge of this criminal activity, the property owner would have had to contact the Alvin Police Department and request such information presumably at regular intervals during the preceding two years. Property owners bear no duty to regularly inspect criminal records to determine the risk of crime in the area. *Timberwalk*, 972 S.W.2d at 759. Further, there was no evidence that Appellant had actual knowledge of previous crimes at the Comfort Inn, neighboring motels, or surrounding area that were sufficiently similar to the criminal conduct in question as to put it on actual notice of the risk of the future criminal activity on its property.

Applying the *Timberwalk* factors, we must ultimately conclude that the risk of the particular criminal conduct against Mrs. LeRibeus was unforeseeable to Appellant and thus, as a matter of law, Appellant had no duty to protect her for the criminal acts of the third parties. Appellant's Issue One is sustained. Because of our disposition of Appellant's first issue, we need not address its remaining issues.

We reverse the trial court's judgment and render a take-nothing judgment in favor of Appellant.