Opinion Issued July 31, 2008









Opinion Issued
July 31, 2008

 








 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-01121-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ROSE BARTON, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER MARTIN DEAN, Appellant

 

V.

 

WHATABURGER, INC., Appellee

 

 



On Appeal from the 157th District Court

Harris County, Texas








Trial Court Cause No. 2003-30240

 



O P I N I O N

This negligence case arises from the aggravated
robbery of a Whataburger restaurant and the resulting murder of one of its
employees on duty during the robbery.  Rose Barton, individually and on behalf
of the estate of her son, Christopher Dean, the Whataburger employee who was
murdered, appeals the trial court’s summary judgment entered in favor of
Whataburger, Inc.  Barton contends that the trial court erred in granting summary
judgment on her claim that Whataburger was negligent in (1) hiring Gregory Love
to manage its restaurant, as he conspired to commit the robbery that led to the
murder; (2) failing to provide a safe workplace for Dean; and (3) failing to
exercise reasonable care to prevent the robbery.  We conclude that the trial court properly
granted summary judgment because the aggravated robbery leading to
murder was not foreseeable as a matter of law.  

Background

On a night in May 2003, Love was working as a
night manager at a Whataburger restaurant in northwest Houston.  Also on duty that night was Dean, a mentally impaired
employee who had worked for Whataburger for fourteen years.  Love arrived early
for his shift that evening, allowing Arthur Murray, another manager, to leave. 
 Murray and Love agreed that Love would count the cash that had accumulated in
the registers during Murray’s shift and place it in the store safe.  

Shortly after Murray left the Whataburger, Love
called Murray and told him that he also needed to leave work.  Love asked Murray if he could leave Dean in charge of the restaurant.  Murray responded that Dean was
capable of running the restaurant, but he could not authorize Love to delegate
his managerial power to Dean.  

Love did not ask Murray to return, and instead
disregarded Murray’s warnings, left the restaurant, and put Dean in charge. 
Love did not count the money in the cash registers or deposit any money in the safe before he left.  When Dean discovered that Love had not counted the money in
the registers, he counted it and deposited the excess in the safe.  Love never
returned to the restaurant that night.  

At around 4:00 a.m., three men, later identified
as Gerald Marshall, Ronald Worthy, and Kenny Calliham, attempted to rob the
Whataburger.  Marshall gained access to the interior of the restaurant by
climbing through the drive-through window.  Marshall chased Dean, eventually
into the back of the restaurant, where he demanded that Dean give him the key
to the safe.  Marshall told Dean that if Dean did not give him the key to the
safe, Marshall would shoot him.  Dean repeatedly told Marshall that he did not
have a key to the safe and could not comply with Marshall’s demands.  When Dean
failed to produce the key, Marshall shot him in the face and fled the scene
with Worthy and Calliham.  Dean died immediately.  The robbers left with nothing, but
afterward robbed a Shipley Doughnut store equipped with video surveillance.  

Police later connected Love to the robbery, and
the State charged him with capital felony murder under the law of parties.  Love
v. State, 199 S.W.3d 447, 449, 452 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d).  A jury found Love guilty, and the trial court assessed punishment
at life in prison.  Id. at 449.  Our court affirmed the conviction.  Id.

Barton sued Whataburger
under the Texas wrongful death statute, asserting that Whataburger’s negligence
proximately caused Dean’s death.  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 71.002(a)–(b), 71.004(a) (Vernon
2008).  Whataburger moved for a no-evidence summary judgment on Barton’s
negligence claim, asserting that Barton had produced no evidence of duty,
breach, or proximate cause.  The trial court granted a final summary judgment
in favor of Whataburger.

Analysis

          Standard of
Review

In a Rule 166a(i)
no-evidence summary judgment, the movant represents that no evidence exists as
to one or more essential elements of the non-movant’s claims, upon which the
non-movant has the burden of proof at trial.  Tex.
R. Civ. P. 166a(i).  The non-movant then must present evidence raising a
genuine issue of material fact on the challenged elements.  Id.  A
no-evidence summary judgment is essentially a pre-trial directed verdict.  Bendigo v. City of Houston, 178 S.W.3d 112, 113–14 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  A fact issue exists if the evidence “rises to a level
that would enable reasonable and fair-minded people to differ in their
conclusions.”  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  If the evidence does no more than create a mere surmise or suspicion of fact,
less than a scintilla of evidence exists, and summary judgment is proper.  Transp.
Ins. Co. v. Faircloth, 898 S.W.2d 269, 282 (Tex. 1995); Macias v. Fiesta
Mart, Inc., 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no
pet.).  A respondent is not required to marshal its proof to defeat a
no-evidence motion for summary judgment; she need only point out evidence that
raises a fact issue on the challenged elements.  Tex. R. Civ. P. 166a(i) cmt. (1997).

Because the trial court’s summary judgment does
not specify the ground on which the court relied for its ruling, we should
affirm it if any theory advanced by Whataburger has merit.  See Weiner v.
Wasson, 900 S.W.2d 316, 317 n.2 (Tex. 1995).
          Nonsubscribers and Negligence

Whataburger is a nonsubscriber to the Texas
Workers’ Compensation Act.  See Tex.
Lab. Code Ann. § 406.002(a) (Vernon 2006) (“Except for public employers
and as otherwise provided by law, an employer may elect to obtain workers’ compensation
insurance coverage.”).  “In an action . . . against an employer who does not
have workers’ compensation insurance coverage, the plaintiff must prove
negligence of the employer or of an agent or servant of the employer acting
within the general scope of the agent’s or servant’s employment.”  Id. § 406.033(d) (Vernon 2006).  Contributory negligence is not a defense in
nonsubcriber cases.  Id. § 406.033(a)(1); Kroger Co. v. Keng, 23
S.W.3d 347, 352 (Tex. 2000).

A negligence cause of action has four elements:
(1) a legal duty owed by one person to another, (2) a breach of that duty, and
(3) damages (4) proximately caused by the breach.  D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002). In the context of the employer-employee relationship, a
company has a duty (1) to provide rules for the safety of employees, and to
warn them of reasonably foreseeable hazards; (2) to furnish reasonably safe
machinery and equipment; (3) to furnish a reasonably safe place to work; and
(4) to exercise ordinary care to select careful and competent fellow
employees.  Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 135–36, 70 S.W.2d 397, 401 (1934); see also Kroger Co. v. Elwood,
197 S.W.3d 793, 794 (Tex. 2006); Humble Sand & Gravel, Inc. v. Gomez,
146 S.W.3d 170, 186 n.45 (Tex. 2004).  An employer, however, is not an insurer
of its employees’ safety.  Elwood, 197 S.W.3d at 794; Leitch v.
Hornsby, 935 S.W.2d 114, 117 (Tex. 1996); Exxon Corp. v. Tidwell,
867 S.W.2d 19, 21 (Tex. 1993).  

Whataburger does not dispute that it owed a duty
to Dean, as its employee, but observes that its duty is to protect its
employees from foreseeable harms.  The issue in this case, whether analyzed as
a part of the duty element of negligence or the causation element, is the
foreseeability of the criminal conduct that led to Dean’s murder.  As the Texas cases that discuss the foreseeability of intervening criminal conduct do so, in the
main, in the context of the element of duty, we do so as well.  See, e.g.,  Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998) (holding
no legal duty exists to prevent unforeseeable criminal acts);  Walker v.
Harris, 924 S.W.2d 375, 377 (Tex. 1996) (holding that duty to protect from
criminal acts “does not arise in the absence of a foreseeable risk of harm”);  Houser
v. Smith, 968 S.W.2d 542, 544–45 (Tex. App.—Austin 1998, no pet.) (in
negligent hiring case, holding that employer had no duty to prevent
unforeseeable criminal conduct of employee); cf. Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995) (in intervening
criminal conduct case, holding that plaintiffs failed to raise fact issues on
key elements of each of their claims, particularly on elements of proximate and
producing cause).

Duty and Intervening
Criminal Conduct

The threshold inquiry in a negligence case is duty.  Centeq Realty,
Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  The
existence of duty is a question of law for a court to decide from the facts
surrounding the occurrence in question.  Van Horn v. Chambers,
970 S.W.2d 542, 544 (Tex. 1998); Siegler,
899 S.W.2d at 197; Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990).  In determining the scope of a
defendant’s duty, we consider the foreseeability of injury weighed against the
magnitude of the burden of guarding against the injury and the consequences of
placing the burden on the defendant.   See Otis Eng’g Corp. v.
Clark, 668 S.W.2d 307, 309 (Tex. 1983).  

As a general rule, “a person has no legal duty
to protect another from the criminal acts of a third person.”  Timberwalk,
972 S.W.2d at 756.  This is because the criminal conduct of a third party is a
superseding cause that extinguishes any liability of the previous actor.  See
Phan Son Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999); Nixon v. Mr.
Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 550 (Tex. 1985); Garcia v. El Paso Ltd.
P’ship,
203 S.W.3d 432, 436 (Tex. App.—El Paso 2006, no pet.); Cowart
v. Kmart Corp.,
20 S.W.3d 779, 783 (Tex. App.—Dallas 2000, pet. denied).  However, if a
criminal’s conduct is a foreseeable result of the prior negligence of a party,
the criminal act may not excuse that party’s liability.  See Pena, 990
S.W.2d at 753; Nixon, 690 S.W.2d at 550; Cowart, 20 S.W.3d at
783.  To impose liability on a defendant for negligence in
failing to prevent the criminal conduct of another, the facts must show more
than conduct that creates an opportunity to commit crime—they must show both
that the defendant committed negligent acts and that it knew or should have
known that, because of its acts, the crime (or one like it) might occur. This
legal principle is imparted in the Restatement (Second) of Torts, which states:

The act of a third person in committing an
intentional tort or crime is a superseding cause of harm to another resulting
therefrom, although the actor’s negligent conduct created a situation which
afforded an opportunity to the third person to commit such a tort or crime,
unless the actor at the time of his negligent conduct realized or should have
realized the likelihood that such a situation might be created, and that a
third person might avail himself of the opportunity to commit such a tort or
crime.

 

Restatement
(Second) of Torts § 448 (1965); see also Pena,
990 S.W.2d at 753; Humble Oil & Ref. Co. v. Whitten, 427 S.W.2d 313,
315 (Tex. 1968) (discussing Restatement (Second) of Torts § 442,
which identifies factors to be considered in determining whether intervening
force rises to level of superseding cause).

          Thus, to impose a legal duty to
prevent the criminal conduct of another, the crime must have been reasonably
foreseeable at the time the defendant engaged in negligent conduct.  Foreseeability
exists if the actor, as a person of ordinary intelligence, should have
anticipated the dangers his negligent act creates for others.  D. Houston, 92 S.W.3d at 454.  A danger is foreseeable if its general character might
reasonably be anticipated, if not its precise manner.   Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992); Nixon, 690 S.W.2d at 551.  The
question involves a practical inquiry, based on common experience applied to
human conduct, and asks whether the injury might reasonably have been
contemplated as a result of the defendant’s conduct.  Doe, 907 S.W.2d at
478.  Importantly, “[f]oreseeability requires more than someone, viewing the
facts in retrospect, theorizing an extraordinary sequence of events whereby the
defendant’s conduct brings about the injury.”  Id.  Under the Texas
Supreme Court’s jurisprudence, we examine whether Barton raises facts that
could lead a reasonable juror to conclude that Whataburger should have
anticipated the criminal danger created by its alleged negligence.  See id. 


Negligent Hiring

Barton first contends
that Whataburger’s negligence in hiring Love as a restaurant manager caused the
aggravated robbery that led to Dean’s murder.  Although no copy of the actual
conviction and judgment appears in this record, Barton produced evidence of an
investigative report that states that, in September 1993, Love was convicted of
a felony offense of “dealing cocaine” in Indiana, and served one year in jail. 
Deposition testimony also indicates that a report exists that, nine years
later, Love was convicted of felony nonpayment of child support in Texas, in November 2002, the week before he applied for a managerial position at Whataburger.[1] 
Whataburger performed a background check on Love before hiring him, but only
searched for criminal convictions in Harris County that occurred between
November 1995 and November 2002.  The search did not reveal either of the two
felony convictions.  Barton alleges that Whataburger’s failure to conduct an
adequate background check ultimately caused the aggravated robbery that led to
Dean’s murder.

While Love’s convictions,
if discovered, should have raised Whataburger’s suspicions about his fitness to
manage a restaurant, under Texas law, they did not make his eventual
participation in an aggravated robbery leading to murder reasonably
foreseeable.  See Houser v. Smith, 968 S.W.2d 542, 545 (Tex. App.—Austin
1998, no pet.) (“[w]hether [defendant] would have fired [the criminal actor]
had he discovered . . . forgery convictions is irrelevant . . . the question
presented is whether . . . criminal conduct and the type of harm that befell
[plaintiff] were foreseeable and presented a risk that [defendant] was required
to guard against . . . .  Under these facts, we hold the conduct and
harm were not foreseeable . . . .”).   Even assuming that information about
Love’s prior convictions, if known, would have torpedoed Love’s employment with
Whataburger, his criminal acts of selling cocaine and failing to pay child
support are different from an aggravated robbery—neither crime inherently
requires violence or theft, the two essential ingredients of an aggravated
robbery.  See Tex. Penal Code Ann.
§ 29.03 (Vernon 2003) (defining aggravated robbery as robbery in which person
either causes serious bodily injury or uses or exhibits deadly weapon) and §
29.02 (defining robbery as theft coupled with bodily injury or threat of
imminent bodily injury or death).  The record contains no evidence that the
events underlying either of Love’s convictions involved violence or theft, or
that Love engaged in any conduct during the seven months he was employed at
Whataburger that would have made his participation in an aggravated robbery
foreseeable.  Even viewed in hindsight, Love’s convictions for selling cocaine
and nonpayment of child support do not indicate a propensity for violent
criminal conduct, like aggravated robbery and murder. Thus, we hold that Love’s
own criminal behavior, and that of his cohorts, is a superseding cause that
precludes Whataburger’s liability for these crimes.  Compare Fifth Club, Inc. v. Ramirez, 196
S.W.3d 788, 796–97 (Tex. 2006) (holding that
employee’s failure to comply with requirement in peace officer manual and his
reprimand for using profanity to member of public did not make his assault of
customer foreseeable), Doe, 907 S.W.2d at 478 (holding
that employee’s two DWI convictions did not make his sexual assault
foreseeable), Houser, 968 S.W.2d at 545 (holding that mechanic’s three
prior forgery convictions did not present foreseeable risk that he would commit
sexual assault),  and Frith v. Fairview Baptist Church, No.
05-01-01605-CV, 2002 WL 1565664, at *1, *4 (Tex. App.—Dallas July 17, 2002,
pet. denied) (mem. op.) (holding that employee’s convictions for burglary,
possession of controlled substance, public intoxication, possession of
marijuana, unlawful carrying of weapon, and evading arrest did not make his
sexual assault of child foreseeable) with Read v. Scott Fetzer Co.,
990 S.W.2d 732, 734, 737 (Tex. 1998) (holding that employee’s deferred
adjudication for indecency with child could make sexual assault of customer
foreseeable when sales were made in customers’ homes), and Deerings W.
Nursing Ctr. v. Scott, 787 S.W.2d 494, 496 (Tex. App.—El Paso 1990,
writ denied) (holding that nurse’s fifty-six prior convictions for theft made
his assault on elderly female visitor foreseeable).  

          In her appellate
brief, Barton calls our attention to criminal cases that note the connection
between drugs and violence.  See, e.g., Harmelin v. Mich., 501
U.S. 957, 1002, 111 S. Ct. 2680, 2706 (1991) (Kennedy, J., concurring)
(upholding life sentence for possession of 650 grams of cocaine against Eighth
Amendment challenge, noting that “Petitioner’s suggestion that his crime was
nonviolent and victimless . . . is false to the point of absurdity. To the
contrary, petitioner’s crime threatened to cause grave harm to society.”); United
States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999) (“Drug
dealing is a ‘crime infused with violence.’” (quoting United States v.
Gambrell, 178 F.3d 927, 929 (7th Cir. 1999))); United
States v. Brown, 913 F.2d 570, 572 (8th Cir.
1990) (“Since weapons and violence are frequently associated with drug
transactions, the officers reasonably believed that the individuals with whom
they were dealing were armed and dangerous.”); United States v. Trullo,
809 F.2d 108, 113 (1st Cir. 1987) (“In the instant case, the officer suspected
appellant of dealing in narcotics, a pattern of criminal conduct rife with
deadly weapons.”); United States v. Post, 607 F.2d 847, 851 (9th Cir.
1979) (“It is not unreasonable to suspect that a dealer in narcotics might be
armed.”); United States v. Oates, 560 F.2d 45, 62 (2d Cir. 1977)
(“Indeed, even apart from the agent’s personal experiences, we have recognized
that to ‘substantial dealers in narcotics’ firearms are as much ‘tools of the
trade’ as are most commonly recognized articles of narcotics paraphernalia.”
(quoting United States v. Wiener,
534 F.2d 15, 18 (2d Cir. 1976))); Carmouche v. State, 10
S.W.3d 323, 330 (Tex. Crim. App. 2000) (“In the instant case, Largent stopped
appellant pursuant to an articulable suspicion that appellant was trafficking
in cocaine.  Based on this limited knowledge of appellant’s suspected
activities, the officers justifiably approached appellant with caution.  It was
not unreasonable to conduct a limited search for weapons in these circumstances.”);
Lemons v. State, 135 S.W.3d 878, 884 (Tex. App.—Houston [1st Dist.]
2004, no pet.) (“McGann testified that, as a result of his experience and
training, when he is involved in narcotics situations, he conducts pat-downs to
check for weapons because there is a greater chance of weapons being
present.”).  These decisions in criminal cases address the constitutionality of
a Terry stop by a police officer, or of severe punishment for possession
of large quantities of drugs.

          We acknowledge
that courts, including ours, have recognized a street-level connection between
drugs, weapons, and violence.  This connection provides police officers with
the constitutionally required reasonable suspicion to conduct a Terry
stop, or a legislature with a justification for imposing harsher sentences on
drug offenders.  See Harmelin, 501 U.S. at 1002–03, 111 S. Ct. at 2706; Terry
v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968).  But this connection
is stereotypical, and is necessary to protect police officers and to deter drug
crimes.  See Harmelin, 501 U.S. at 1002, 111 S. Ct. at 2706; Terry,
392 U.S. at 27, 88 S. Ct. at 1883.

A stereotypical
connection, however, is insufficient to raise more than a scintilla of evidence
that a person convicted of selling cocaine, without any accompanying evidence
of violence, will foreseeably commit aggravated robbery leading to murder in
the future.  Here, we have no evidence that Love’s cocaine sale involved any
sort of violence or a weapon.  While the smell of marijuana or the suspicion
that a defendant possesses narcotics might provide a police officer sufficient
justification to frisk a suspect for weapons under Terry, a
seven-year-old conviction for “dealing” cocaine, standing alone, does not make
it foreseeable that a defendant will commit a violent crime in the future. 
Compare Terry, 392 U.S. at 27, 88 S. Ct. at 1883, Brown, 188 F.3d at
865, Brown, 913 F.2d at 572, and
Trullo, 809 F.2d at 113, with Ramirez,
196
S.W.3d at 796–97, Doe, 907 S.W.2d at 478, and Frith,
2002 WL 1565664, at *4.  Without any indication that a past crime involves
weapons or violence, that past crime does not indicate a propensity for future violent,
assaultive criminal conduct sufficient to impose liability on another who
failed to detect the past crime.  See Ramirez,
196
S.W.3d at 796–97; Doe, 907 S.W.2d at 478; Frith,
2002 WL 1565664, at *4.  We therefore hold that Barton has failed to produce
more than a scintilla of evidence that, even assuming that Whataburger should
have discovered Love’s criminal history, given that history, it was reasonably
foreseeable that Love would conspire in the aggravated robbery that resulted in
Dean’s murder.  See Chapman, 118 S.W.3d at 751; Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).  

Failure to Provide a Safe
Workplace

           Barton further contends that, even if it was
not legally foreseeable that Love would engineer the crime that resulted in
Dean’s murder, Whataburger generally knows of an increased risk of a violent
crime occurring at restaurants open late at night and should have taken
reasonable security measures to prevent it.  Relying on the Texas Supreme
Court’s decision in Timberwalk, Whataburger responds that the robbery
that occurred was not reasonably foreseeable on this basis either.  972 S.W.2d
at 756.

Employees are the invitees of their employer.  Hernandez
v. Heldenfels, 374 S.W.2d 196, 197 (Tex. 1963); Allen v. Connolly,
158 S.W.3d 61, 65 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  In
Timberwalk, the Texas Supreme Court held that “[w]hen general danger
to invitees is the risk of injury from criminal activity by third parties, the
evidence must reveal specific previous crimes on or near the premises in order
to establish foreseeability of harm.”  972 S.W.2d at 756; Allen,
158 S.W.3d at 66.  We determine whether the risk of criminal conduct was
foreseeable to Whataburger “in light of what the premises owner knew or should
have known before the criminal act occurred.”  Timberwalk, 972 S.W.2d at
757; Allen, 158 S.W.3d at 66.   In that vein, we consider (1) whether
any criminal conduct previously occurred on or near the property, (2) how
recently it occurred, (3) how often it occurred, (4) how similar the conduct
was to the conduct under review, and (5) the publicity of the occurrences, as
to indicate that the landowner knew or should have known about them.  Timberwalk,
972 S.W.2d at 757; Stewart v. Columbia Med. Ctr. of McKinney Subsidiary,
L.P., 214 S.W.3d 659, 663 (Tex. App.—Dallas 2007, pet. denied).  

As an initial matter,
Barton contends that the Timberwalk analysis should not apply in this
case because Timberwalk dealt with premises liability and the duty owed
to invitees, not the nondelegable duties an employer owes to its employees.  Although
premises liability and employer liability are distinct theories, the Texas
Supreme Court has observed that “the nature of the duty of the landowner to use
reasonable care to make his premises reasonably safe for the use of his
invitees may, in all material respects, be identical with the nature of the
duty of the master to use reasonable care to provide his servant with a
reasonably safe place to work . . . .”  Sears, Roebuck &
Co. v. Robinson, 154 Tex. 336, 340, 280 S.W.2d 238, 240 (1955); see Allen,
158 S.W.3d at 65.  The incidence of violent crime, the foreseeability of
violent crime on Whataburger’s premises, and the preventative measures that
Whataburger could or did implement in view of the risk of such crime were the
same for Whataburger in its capacity as employer as they were for Whataburger
in its capacity as premises occupier.  See Allen, 158 S.W.3d at 66; see
also Wise v. Complete Staffing Servs., Inc., 56 S.W.3d 900, 905 (Tex.
App.—Texarkana 2001, no pet.) (in context of preventing criminal conduct,
noting lack of authority “imposing an expanded duty on an employer or
suggesting that an employee under this type of allegation of harm is a part of
a specially protected group”).  In Texas, no legal basis exists to treat Whataburger’s duty to exercise reasonable care, as an
employer, in providing a reasonably safe workplace differently from
Whataburger’s duty, as premises occupier, to use ordinary care  in protecting
invitees from criminal acts of third parties.  Robinson,
280 S.W.2d at 240; Allen, 158 S.W.3d at 66.  We thus agree with our
sister court of appeals that the Timberwalk analysis applies in the
context of an employer’s duty to exercise reasonable care in providing a safe
workplace for its employees when an employee asserts that the employer breached
its duty by failing to protect the employee from criminal acts.  See Allen,
158 S.W.3d at 66; see also Gibbs v. ShuttleKing, Inc., 162 S.W.3d 603,
609–10 (Tex. App.—El Paso 2005, pet. denied) (applying Timberwalk
analysis in context of employer-employee relationship).

Barton further contends
that the Timberwalk analysis should not apply in this case because the
robbers perpetrated their crime with the assistance of Love, Whataburger’s
manager on duty.  Barton asserts that the Timberwalk factors, which are
used to determine the foreseeability of a criminal act on an owner’s premises,
apply only to random crime, not to a targeted crime accomplished by, or with
the assistance of, an insider.  See Timberwalk, 972 S.W.2d at 757–59. 
Barton is correct that the Timberwalk factors are more applicable to
random crime than targeted crime, but the preventative measures that Barton
contends Whataburger should have implemented to prevent a robbery by a random
criminal or an insider are the same, save for Whataburger’s decision to hire
Love in the first instance.  In this sense, the Timberwalk factors
assist in determining whether fact issue exists as to the foreseeability of the
robbery based on the evidence that Barton advances regarding the general
foreseeability of criminal activity at the restaurant.  See id. And, the
Dallas Court of Appeals used the Timberwalk factors in analyzing the
foreseeability of targeted crime.  See Stewart, 214 S.W.3d at 663
(applying Timberwalk to test foreseeability of targeted shooting of
employee).

          Barton produced
some evidence of criminal activity at the Whataburger in the years preceding
Dean’s murder: in July 1997, six years before the incident, a customer was shot
in the parking lot, and another customer in the drive-through lane was robbed
and shot in the thigh; in July 1998, a customer was robbed in the drive-through
lane; in June 1999, a customer’s purse was stolen; in July 2000, a customer
reported an assault (without injury); in April 2001, a woman sought help in the
Whataburger, reporting that she had been shot; in August 2001, a woman reported
an assault (without injury); in February 2002, a woman reported that her car
was stolen from her in the parking lot; in April 2002, one customer
intentionally hit another customer’s vehicle in the drive-through lane (with
property damage but not injury); and, in February 2003, police arrested a
person who refused to leave the premises.[2]   

In contrast,
no evidence exists that the Whataburger was the scene of any aggravated
assault, aggravated robbery, sexual assault, or murder in the three years prior
to Dean’s murder.  No crime similar to this one had ever occurred:  no one had
ever robbed the restaurant before, nor had it ever been the scene of any
workplace violence, nor had anyone ever committed any sort of crime against a
Whataburger employee, nor had anyone ever been murdered.

Comparing this evidence with other, similar
cases in Texas, we agree with the trial court that the evidence does not show
the rampant, violent criminal activity sufficient to raise a fact issue about
the foreseeability of the aggravated robbery that resulted in Dean’s murder.  See
Timberwalk, 972 S.W.2d at 758 (“On the other hand, the complete absence of
previous crimes, or the occurrence of a few crimes over an extended time
period, negates the foreseeability element.”); Allen, 158 S.W.3d at 67; compare
Jai Jalaram Lodging Group, L.L.C. v. Leribeus, 225 S.W.3d 238, 245–46 (Tex.
App.—El Paso 2006, pet. denied) (holding that no duty existed when incident
reports within two years before, while showing a rise in criminal activity, did
not show any notable frequency nor were they of the kind that would have
facilitated the violent personal crime in question), Gibbs, 162 S.W.3d
at 612 (holding that robbery of bus was not foreseeable because plaintiff
produced no evidence of similar robberies on same bus line), and Allen,
158 S.W.3d at 67 (holding that sexual assault was not foreseeable because
plaintiff produced no evidence of similar criminal acts on or near defendant’s
premises), with Trammell Crow Cent. Tex., Ltd. v. Gutierrez, 220 S.W.3d 33, 40 (Tex.
App.—San Antonio 2006, pet. granted) (holding that murder at shopping mall was
foreseeable because plaintiff produced evidence of ten violent crimes at mall
in previous two years), and Dickinson Arms-Reo, L.P.
v. Campbell, 4 S.W.3d 333, 335–36,
346 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding that carjacking
and murder were foreseeable in light of 184 reported criminal incidents on
premises during previous three years).  

Barton’s expert also
averred that an undefined area surrounding the restaurant had a crime “index
rate” four times greater than a national average and noted evidence of three
drive-through robberies at other Whataburger restaurants, namely, an attempted
drive-through robbery five miles away at Store No. 263, in November 1998, an
attempted drive-through robbery sixteen miles away at Store No. 462 in December
1998, and a drive-through robbery five miles away at Store No. 605 in April
2003.  The expert opined that “an industry standard of foreseeability” exists
because of the well-known high risk of armed robbery to late-night convenience
stores and restaurants, pointing in particular to a study of convenience store
robberies and literature that concludes that “the greatest risk of workplace
violence including homicide (80%) comes from being a victim of an armed
robbery.”  Barton further asserts that Whataburger foresaw the risk of crime on
its premises because a previous manager had employed a security guard on the
weekends to work the early morning hours.  A new store manager discontinued the
practice in 2002, after determining that it was not cost-effective.


Under Timberwalk,
general evidence of crime rates and of robberies in other locales cannot create
“an industry standard of foreseeability” sufficient to impose a duty to prevent
crime.  See Timberwalk, 972 S.W.2d at 757 (“Statistics
regarding large or undefined geographic areas do not by themselves make crime
foreseeable at a specific location.”).  None of the
robberies occurred at a restaurant closer than five miles to the Whataburger at
issue in this case.  “For a landowner to foresee criminal conduct on
property, there must be evidence that other crimes have occurred on the
property or in its immediate vicinity.”  Id.  Courts
generally rely on small geographic areas in considering crime in the “immediate
vicinity.”  See id. at 757, 759. (considering apartment complex,
neighboring complexes, and one-mile radius around complex);
see also Mellon Mortgage Co. v. Holder, 5 S.W.3d
654, 664 (Tex. 1999) (considering parking garage and one-quarter mile radius
around garage); Gibbs,
162 S.W.3d at 612 (holding that evidence of bus robberies in other states did
not make bus robbery in Texas foreseeable); Tex. Real Estate
Holdings, Inc. v. Quach, 95 S.W.3d 395, 398–99 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (considering premises and area of 3.5 square miles
around premises); Campbell,
4 S.W.3d at 338–39 (considering apartment complex, nearby hotel, two nearby apartment complexes, all located within
one-square-mile); Plowman v. Glenn Willows Apartments, 978 S.W.2d 612,
618 (Tex. App.—Corpus Christi 1998, pet. denied) (considering apartment complex
and neighborhood surrounding complex). 

          Finally,
Barton’s contention that Whataburger’s earlier employment of a security guard
on the weekends proves the foreseeability of the robbery is unavailing.  “The
mere act of taking preventative measures to protect against the possibility of
future crime is not the same as foreseeing that criminal activity.” 
Allen, 158 S.W.3d at 67.  If we equated preventative measures to
foreseeability, we would “virtually eliminate the foreseeability
requirement for a negligence claim against a person who installs a security
system or takes other preventative measures to guard against crime.”  Id.; accord Stewart, 214 S.W.3d at 665; Garcia, 203 S.W.3d at
437–38 (holding that targeted murder committed on premises of Sonic restaurant
was not foreseeable result of Sonic’s failure to employ security guard).

Applying the Timberwalk factors of
proximity, recency, frequency, similarity, and publicity, we conclude that
Barton has failed to raise a fact issue that the aggravated robbery resulting
in Dean’s murder at the Whataburger restaurant was foreseeable, so as to impose
a duty on Whataburger to take reasonable measures to prevent it.  See Timberwalk, 972 S.W.2d at 757, 759
(holding that criminal conduct on premises was not foreseeable); Allen,
158 S.W.3d at 66–67 (same); Quach, 95 S.W.3d at 400–01
(same).[3]

Other Acts of Negligence

          Lastly, Barton
contends that Whataburger’s employees were negligent in violating its own
company policies and procedures to minimize the risk of theft or robbery. 
Specifically, Barton alleges that Whataburger’s employees committed the
following acts of negligence: (1) store manager Davilyn Spencer left her safe
key at the restaurant at the end of her shift; (2) Murray left his shift early
without notifying Spencer; (3) Murray failed to count the money in the
registers and deposit the excess in the safe at the end of his shift; and (4)
Murray failed to notify Spencer that no manager would be on duty during the
shift in which Dean was killed.  Readily available cash, and a key to the safe,
Barton argues, “gave Greg Love exactly what he was looking for” in planning the
robbery.

          But, as Texas cases and the Restatement observe, foreseeability requires more than “afford[ing] an
opportunity” to commit a crime.  The aggravated robbery and murder at the
Whataburger was an extraordinary event, with the record containing no evidence
that anyone had ever attempted to rob the restaurant, much less at gunpoint,
before.  Nothing in the record indicates that Love had any history of
violence.  An aggravated robbery and murder is not the ordinary result of the
situation created by Spencer and Murray’s alleged negligence.  See Pena,
990 S.W.2d at 755–56; Whitten, 427 S.W.2d at 315 (noting that
intervening force can rise to level of superseding cause when its operation or
consequences are extraordinary).  The evidence is undisputed that the
robbery was a wrongful act and that at least three of the men involved have been
convicted of Dean’s murder—Marshall is sentenced to death and Love to life in
prison.  See Pena,
990 S.W.2d at 754; Whitten, 427 S.W.2d at 315; see also
 Marshall v. State, 210 S.W.3d 618, 620, 637 (Tex. Crim. App.
2006); Love, 199 S.W.3d at 449,
457.   We hold that these wrongful acts are a superseding cause
of Dean’s death, and the trial court properly granted Whataburger’s no-evidence
summary judgment on Barton’s ordinary negligence claims.  See Pena,
990 S.W.2d at 756 (holding that murder committed by minor gang members was not
foreseeable result of sale of alcohol to gang members); Pichardo
v. Big Diamond, Inc., 215 S.W.3d 497, 502–03 (Tex. App.—Fort Worth 2007, no
pet.) (holding that injury caused by criminal fleeing after stealing gas from
gas station was not foreseeable result of station’s policy of not requiring
customers to pre-pay for gas); Garcia, 203 S.W.3d at 437–38
(holding that targeted murder committed on premises of Sonic restaurant was not
foreseeable result of Sonic’s failure to employ security guard); Boggs v. Bottomless Pit
Cooking Team, 25 S.W.3d 818, 824–25 (Tex. App.—Houston [14th Dist.] 2000, no
pet.) (holding that murder committed by customer was not foreseeable result of
excessive sale of alcohol to customer); Cowart, 20
S.W.3d at 784–86 (holding that murder committed by third party was not
foreseeable result of ammunition sale to minor).

Conclusion

          We hold that
the trial court properly granted summary judgment
because the diabolic conduct of others—men who committed aggravated robbery and
murder—was a superseding cause of Dean’s death that was not reasonably
foreseeable to Whataburger.  We therefore affirm the judgment of the trial
court.

 

 

                                                                   Jane Bland

                                                                   Justice

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.









[1]
              None of the Indiana or Texas criminal court records, or copies of Love’s convictions, are part of the record in
this case.  A “possible matching record” internet report states that Love was
convicted of an offense for “dealing-coke/narcotics,” and that he was sentenced
to two years, five months, and four days.  The report provides no further
information about the nature of the offense.  The record also shows that one of
Love’s previous employers, Taco Bell, fired him for falsifying his employment
application after the conviction came to light.  Love similarly falsely stated
on his application to Whataburger that he had never been convicted of a felony.





[2]           Relying on our court’s opinion in Love
v. State, the parties note that, the day before Dean’s murder, Love
met with his fellow conspirators outside the restaurant.  199 S.W.3d 447, 449 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d).  As part of his alibi, Love told coworkers that these men “were attempting to
rob someone at the restaurant,” but he had convinced them not to.  Id.  Love told his boss, Davilyn Spencer, that the men merely had complained
about their food.  Id. at 450.  Love did not notify police
or management of this event.  Id. 





[3]
          Barton’s expert lists a number of
security measures that the restaurant lacked that placed it below the standard
in the industry for security for an all-night establishment.  Among these are
Whataburger’s failures to provide video surveillance, to assess and report
security risks, and to physically prevent ingress to the restaurant through the
drive through window.  Whataburger responds that none of these measures would
have prevented this crime, given Love’s involvement and the fact that, later
the same evening, the criminals robbed a Shipley doughnut store that had some
of the security measures that Barton’s expert recommended.  Given our holding
that this crime was unforeseeable, we do not address Barton’s allegations of
departure from industry standards or Whataburger’s response that additional
security would have been fruitless, negating any “but for” causation for this
evidence.